Patrick J. O'HANLON, Individually and as Administrator of the Estate of Brian O'Hanlon, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut Corporation, Insurance Company of North America, a Pennsylvania Corporation, and Nationwide Mutual Insurance Company, an Ohio Corporation, Defendants.

Civ. A. No. 76–59.

United States District Court,
D. Delaware.

Aug. 1, 1977.

David Roeberg, of Roeberg & Agostini, Wilmington, Del., for plaintiff.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, Del., for defendant Hartford Acc. & Indem. Co.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant Insurance Co. of North America.

F. Alton Tybout, of Tybout & Redfearn, Wilmington, Del., for defendant Nationwide Mut. Ins. Co.

## OPINION

STAPLETON, District Judge:

This is a tort action arising out of an automobile accident. Several questions involving the interpretation of three insurance contracts and of certain provisions of Delaware insurance law are presented on what is styled plaintiff's motion for partial summary judgment.[1]

The facts necessary for an understanding of the questions before the Court can be summarized briefly. In 1974, Brian O'Hanlon, a minor, was a passenger in a car owned and operated by Michael Ryan. The Ryan car and an unidentified vehicle engaged in a drag race. Ryan's car was forced off the road and it collided with stationary objects at the side of the road. Brian O'Hanlon was severely injured and remained hospitalized for much of the next two years. He died in 1976, apparently from the injuries sustained in the accident. This action is brought by his father, Patrick O'Hanlon, individually and as administrator of Brian's estate, against Hartford Accident and Indemnity Company and the Insurance Company of North America, companies with which the O'Hanlon family and certain O'Hanlon business interests were insured, and against Nationwide Mutual Insurance Company, whose uninsured motorist coverage on the Ryan car extends to injuries Brian received while a passenger in that car.

## JURISDICTION

Jurisdiction of this Court is based on diversity of citizenship. Defendants contend that, by virtue of the language of 28 U.S.C. § 1332(c), the requisite diversity does not exist. That section provides in pertinent part:

[I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

This provision, added to Section 1332 in 1964 was designed to stem the flow of tort suits to the federal courts in Louisiana and Wisconsin, the two states which permitted an injured party to bypass suit against the tortfeasor in favor of a "direct action" against the insurer. S.Rep.No.1308, 1964 U.S.Code Cong. & Admin.News 2778, 2779. It was not designed to eliminate diversity jurisdiction in all actions against insurance companies. By its own terms, it does not include the present suit within its purview.

This is not an action against "the insurer of a policy or contract of liability insurance". When a hit-and-run driver causes injury, by definition, there is no "liability insurance" from which to seek a recovery because the person "liable" has fled. Rather, this is an action based on uninsured

---

1. Several of the defendants have also filed cross-motions for summary judgment on the same issues.

motorist insurance, coverage a policyholder provides for himself and, generally, those in his family and those who are passengers in his car to afford protection when the liable party cannot be reached.[2]

On the other side of the same coin, this is not a "direct action". In *Lank v. Federal Insurance Company*, 309 F.Supp. 349, 351 (D.Del.1970), this Court ruled:

> Unless the suit against the insurance company is of such a nature that liability sought to be imposed could be imposed against the insured, this action is not a "direct action" in the sense used in the proviso of § 1332(c).

Here, as in *Lank*, this suit is not one in which the liability could have been imposed on the insured. The "insured" under uninsured motorist coverage is the person injured as a result of the actions of the missing or judgment-proof tortfeasor. In other words, under both Ryan's Nationwide policy and O'Hanlon's Hartford and INA policies, Brian O'Hanlon is the insured. O'Hanlon could not have sued himself in a "direct action". Thus, I conclude diversity jurisdiction is proper.

## HIT–AND–RUN INSURANCE

■ The contract interpretation question before the Court is whether the "hit-and-run" clause of each of the relevant insurance policies covers an accident in which there was no physical contact between the unidentified vehicle that caused the accident and the vehicle in which the injured plaintiff was riding. If physical contact is a prerequisite to recovery under the "hit-and-run" clause as written, then it is necessary to decide whether the clause violates 18 Del.C. § 3902 which requires all automobile liability insurance policies to include coverage for accidents involving "hit-and-run" vehicles.

The hit-and-run clauses of the three insurance policies are identical:

A "hit-and-run vehicle" means a highway vehicle which causes an accident resulting in injury to an insured or property damage arising out of physical contact of such vehicle with the person or property of the insured or with a vehicle which the insured is occupying at the time of the accident.

I think the language quite clearly limits coverage to accidents involving physical contact. Although the construction plaintiff argues for, that physical contact is required only in suits arising out of property damage, is a possible one, I think it highly improbable that such a construction was intended. Even under the widely accepted rule of construction that ambiguities in an insurance contract will be construed against the drafter, a court need not accept a highly improbable construction when a much more reasonable interpretation readily commends itself. Accordingly, I conclude that the insurance contracts intended to impose a physical contact requirement. I turn now to the question whether such a limitation on hit-and-run coverage can be squared with the policy of the statute. I do not believe that it can.

Many courts have considered this same question in light of statutes similar to the Delaware law for uninsured motorist coverage.[3] No clear majority rule has emerged. *Compare Prosk v. Allstate Insurance Co.*, 82 Ill.App.2d 457, 226 N.E.2d 498 (1967) (physical contact requirement permissible under the statute), *with Progressive Mutual Insurance Co. v. Brown*, 249 So.2d 429 (Fla. 1971) (physical contact requirement violates the policy of the statute). Courts which uphold the physical contact requirement say that this is a legitimate means for insurance companies to protect themselves from fraudulent claims of insureds who may be involved in a one car accident of their own making and seek to pin the fault on a fictional hit-and-run vehicle. Courts which invalidate the clause say that it contravenes

---

2. The uninsured motorist coverage and liability coverage, of course, are both part of the same basic policy of automobile insurance.

3. Hit-and-run coverage is one aspect of Delaware's uninsured motorist coverage requirements. The terms "hit-and-run" and "uninsured motorist" will be used interchangeably throughout the remainder of the Opinion.

the design of uninsured motorist statutes to assure some recovery to those who are injured by persons who flee the scene of an accident and, thus, who cannot look to the tortfeasor for recovery. They note that, as in all cases, the claimant must satisfy his or her burden of proof with respect to all elements of the claim, including proof of the existence of a hit-and-run vehicle.

The Delaware Supreme Court, whose law controls in this diversity case, has not passed on the physical contact question. Recently, however, Judge Stiftel of the Superior Court considered the matter and held that a physical contact clause in an insurance policy was inconsistent with the purpose of 18 Del.C. § 3902. *Abramowicz v. State Farm Mutual Automobile Insurance Co.*, 369 A.2d 691 (Del.Super.1977). Judge Stiftel reviewed the conflicting decisions and found the reasoning in *Hartford Accident and Indemnity Co. v. Novak*, 83 Wash.2d 576, 520 P.2d 1368 (1974), and *Soule v. Stuyvesant Insurance Co.*, 364 A.2d 883 (N.H.1976), the most persuasive. I agree.

In *Soule*, the court pointed out that the phrase "hit-and-run" has a commonly accepted meaning which is drawn from criminal statutes enacted in a majority of jurisdictions. Hit-and-run statutes impose a duty on motorists to stop at the scene of any accident in which they are involved "in any manner" and give certain information and render aid to the injured. 364 A.2d at 885. No one would construe these criminal statutes to include only accidents involving physical contact and the court found no rationale for so limiting the insurance statutes. I am in complete agreement.

The sole concern reflected in the insurance statute is that of providing a source of recovery for those injured in auto accidents by persons who cannot be held financially responsible. The need to which it is addressed exists regardless of whether or not the accident entailed physical contact. Any

fraudulent claims made under the statute can be rooted out by the same means available in all litigation.

■ The one argument made by defendants here which it appears Judge Stiftel and the cases he relied on did not consider is that the clause in question has been approved by the State Insurance Commissioner as consistent with State insurance law. In *Nationwide Mutual Insurance Co. v. Krongold*, 318 A.2d 606, 609 (Del.1974), the Delaware Supreme Court noted that, while not conclusive, interpretations of the Insurance Commissioner are entitled to some weight. In *Krongold*, the Commissioner had taken an active part in obtaining the passage of the challenged legislation and, thereafter, had formally adopted regulations interpreting it. Here, in contrast, while the insurance contracts were submitted to the Commissioner pursuant to 18 Del.C. § 2712, which requires the filing of all insurance forms with the Commissioner prior to their use in the State, there is no indication that the Commissioner actively considered and decided the question presented by this case. All we know of his involvement is that he did not issue a notice disapproving the clause. Under the circumstances, his "approval" of the clause is entitled to only minimal deference and that deference is outweighed by the more persuasive and thorough analysis of the authorities adverted to above. I conclude that a "physical contact" clause in hit-and-run insurance coverage violates 18 Del.C. § 3902 and is, therefore, ineffective.

OTHER INSURANCE

■ Applicable to the uninsured motorist coverage portions of the policies at issue in this case are a "limits of liability" clause and what is referred to as an "other insurance" clause. The clauses are set out in the margin.[4] The parties do not dispute that, if

4. Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by:

(1) All sums paid on account of such bodily injury or property damage by or in behalf of
* * * * * *
(ii) any other person or organization jointly or severally liable together with such own-

valid, these clauses have the following effects: (1) recovery under the uninsured motorist coverage is reduced by any amounts paid by the parties jointly or severally liable for the injuries, including sums paid under Ryan's liability insurance; (2) the O'Hanlon uninsured motorist coverage is "excess" insurance over any "primary" insurance on the Ryan automobile in which the accident occurred and is available only if the O'Hanlon coverage exceeds the limits of liability on the Ryan insurance; (3) except as provided in (2), O'Hanlon cannot recover an amount greater than the highest limit of liability of any single insurance policy applicable to the accident, with each insurance company contributing its *pro rata* share.

Plaintiff contends that these results are inconsistent with the purpose of 18 Del.C. § 3902 and, thus, that the "limits of liability" and "other insurance" clauses are void. For the reasons that appear below, I do not agree and, accordingly, I hold that the defendants are entitled to enforce those provisions of their insurance contracts.

Section 3902(a) and (b) provide in pertinent part:

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. Except, that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. . . .

(b) The amount of coverage to be so provided shall not be less than the maximum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State. . . . Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy.

As already noted, the concern which prompted this statute was the plight of individuals who suffer injury or damage at the hand of one from whom compensation for that injury or damage cannot be secured. The legislature sought to encourage insurance protection for such individuals. Section 3902 pursues this objective in two ways. First, it requires that uninsured motorist coverage in a minimum amount be included in all liability insurance policies issued with respect to Delaware vehicles unless the insured rejects the coverage in writing. Second, it requires issuing carriers

---

er or operator for such bodily injury or property damage,
including all sums paid under the bodily injury or property damage liability coverage of the policy.

*Other insurance.*

With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Section III [Protection against uninsured motorists] shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

to offer additional uninsured motorist coverage up to the limits of the personal injury liability coverage or $300,000, whichever is less.

The first function of the statute is to set a floor on the amount of coverage required in the absence of a written waiver. This floor has been established by reference to the State's financial responsibility statute which requires a motorist to carry a minimum of $10,000 insurance for injury to two or more persons in one accident. At the time relevant here, the financial responsibility laws expressly permitted the prorating of the coverage provided in policies issued to meet its requirements and other collectible insurance and also permitted the minimum coverage requirements to be met by several policies jointly. 21 Del.C. § 2904.

The financial responsibility statute and the uninsured motorist statute serve the same objective—that of providing a minimum pool of resources upon which an injured party can draw. The minimum pool contemplated in the financial responsibility statute quite clearly appears to be $10,000 per person and not $10,000 per person plus the limits of any other applicable coverage. Given the close relationship between the two statutes, I would expect the Delaware Courts to infer that a similar intent is embodied in the uninsured motorist statute.

The uninsured motorist statute offers substantial support for this inference. Section 3902(d) provides:

> In the event of payment to any person under uninsured vehicle coverage and, subject to the terms of such coverage, to the extent of such payment, the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

This provision indicates that the legislature did not intend to require that the injured party receive the aggregate limits of all policies which cover the injuries.

Thus, reading the two statutes together, I conclude that Section 3902 creates a scheme whereby any individual who does not expressly opt out in writing will be assured of the same minimum pool of resources from which to seek compensation for injuries inflicted by an uninsured motorist as he would have in the event of injuries inflicted by a person having the minimum coverage permitted under Delaware law—that is, $10,000. The clauses about which plaintiff here complains do not undermine the statutory objective of assuring such a minimum pool.

This statute does serve a second function. It requires liability insurers to offer an insured the opportunity to protect himself or herself from the risks posed by an uninsured driver to the same degree the insured protects others through liability insurance. But here again, nothing in the other insurance clauses contravenes that purpose. If the insurer complies with the statutory obligation to offer the additional uninsured motorist coverage up to $300,000 and the insured elects to accept it, another insurance clause cannot reduce the total amount recoverable to less than the amount of protection the insured has paid a premium for. In essence, the clause does no more than limit a claimant to the recovery of a single award of the highest liability limit of any of the policies applicable to the accident.

As earlier indicated, the suggestion implicit in plaintiff's argument is that the legislature intended to assure a pool of resources equal to the aggregate of the policy limits of whatever number of applicable policies the parties to the accident happen to have in force. While such a requirement would be more beneficial to some people injured by an uninsured motorist than would the requirement which the Court perceives in the statute, it does not appear to be a particularly rational way of establishing a minimum floor of available compensation. The floor thus set would be a function of the mere fortuity of the number of policies applicable in a given accident.

I am aware that an increasing number of courts that have considered similar "other

insurance" clauses have found them invalid when measured against various uninsured motorist coverage statutes. *See, e. g., Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), and cases collected at 19 *Couch on Insurance* § 82.1:10 (Anderson ed.). I am not convinced by their reasoning. They take the position that the statute requires uninsured motorist coverage as part of every policy and they note that insurance carriers charge a premium for such coverage on each policy. They conclude that it should be possible to collect on each policy for which a premium for uninsured motorist coverage was paid. This rationale disregards the policy behind the statute as well as the economics of the matter.

There is nothing in the uninsured motorist statute or any other Delaware statute which requires that, in case of injury, policy limits be paid on every policy for which a premium has been paid. Given the prevalence of "other insurance" clauses in liability insurance policies, I assume that no such policy prevails in most other states. What appears to have concerned the courts which have voided "other insurance" clauses in uninsured motorist cases is not whether such clauses, *per se,* are against public policy but rather whether the insured would get his money's worth if they were given effect. This, however, is a question which cannot be answered by reference to the Delaware uninsured motorist statute. The legislature simply did not there address itself to the reasonableness of premiums.

Mr. O'Hanlon paid premiums for policies which contained "other insurance" clauses. The carriers thereby assumed a risk limited by the possibility that there would be other insurance available to fund all or part of any recovery to which a claimant became entitled. The premium was filed and reviewed by the Insurance Commissioner upon whom the General Assembly has bestowed the authority to regulate rates.[5] Given this statutory scheme, I do not believe the Delaware Courts would refuse to

enforce these policies as written on the ground that the insured was shortchanged.

Until the Delaware Supreme Court instructs otherwise, I find no repugnance between the statute and the challenged terms of the contract. Accordingly, the contract will govern.

## STACKING

■ Plaintiff maintains that his Hartford policy provides four coverages applicable to the injuries sustained by Brian O'Hanlon at the hands of the hit-and-run driver each of which has a limit of $10,000, that a separate payment was made for each coverage, and that plaintiff is, accordingly, entitled to recover $40,000. Hartford argues stenuously, however, that the terms of the policy "clearly" prohibit such "stacking" and limit the plaintiff to one uninsured motorist recovery of $10,000.

As will be seen from a review of the clauses in the policy relevant to the question, the policy is most ambiguous on this point. Resolving the ambiguity in favor of the insured, as I am required to do under Delaware law,[6] I conclude that O'Hanlon must be permitted to stack uninsured motorist coverages on the four automobiles on which he paid an uninsured motorist coverage premium under the Hartford policy.

The Hartford policy includes an endorsement entitled "Protection Against Uninsured Motorist Insurance (Delaware)" and designated "Form A2789 0". This endorsement has a "Schedule" at the top which is followed by a recitation in Section I that the company, "in consideration of the payment of premium and subject to all of the provisions of . . . [the] endorsement and to the applicable provisions of the policy", will pay all sums which the insured "shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle". Section III, however, limits this commitment in the following terms:

---

**5.** 18 Del.C. Ch. 25.

**6.** *See, e. g., Novellino v. Life Insurance Co. of North America,* 216 A.2d 420, 422 (Del.1966).

LIMITS OF LIABILITY

Regardless of the number of insureds under this insurance, the company's liability is limited as follows:

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident. . . .

When one refers to the schedule at the top of the endorsement, it is ascertained that the limit as to "each" person is "10 thousand dollars". If this endorsement was the only provision in the policy explaining what uninsured motorist coverage the policy provides, Hartford would appear to be on solid ground in arguing against stacking. However, there is more.

I turn next to the "Conditions" section of the policy. Paragraph 4 therein states:

Two or More Automobiles—Sections I, II and IV: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, . .

Plaintiff argues that the purpose of this provision is to prohibit cumulation or stacking of policy limits with respect to coverage afforded in Sections I, II and IV, but, by negative implication, to permit stacking of coverage under Section III, the uninsured motorist portion of the policy. This interpretation was accepted in *Goodman v. Continental Casualty Company,* 347 A.2d 662 (Del.Super.1975). I have studied the *Goodman* case but I am not convinced that it's analysis on this point is sound. In my view the most reasonable inference to draw from the cited language is that the terms and conditions of uninsured motorist coverage are to be ascertained by reference to other provisions of the policy, in particular the uninsured motorist endorsement which is substituted for Section III.[7] However, even if I were willing to draw a negative inference from the absence of mention of Section III in this Condition, I would draw one

contrary to the reading plaintiff suggests. With respect to Section III or the uninsured motorist endorsement of the policy, I would read Paragraph 4 to say: "When two or more automobiles are insured hereunder, the terms of this policy shall *not* apply separately to each, . . ." Most reasonably interpreted, that would indicate that, regardless of the number of vehicles insured, only one uninsured motorist coverage is provided. Again, based on this part of the policy, Hartford's anti-stacking argument is the sounder one.

Turning finally to the "Declarations" sheet of the policy, the ambiguity comes into focus. After describing the four O'Hanlon vehicles, the policy summarizes in tabular format the "Coverages and Limits of Liability". The table is preceded by the following statement:

With respect to each automobile to which coverage applies, *the insurance afforded is* only *with respect to* each and *so many of the coverages as are indicated by specific premium charge* or charges. With respect to each such automobile, the limits of the company's liability against each such coverage shall be as stated herein, subject to all terms of this policy having reference thereto. (Emphasis added)

Plaintiff quite reasonably argues that this paragraph authorizes the stacking of uninsured motorist coverages for each vehicle on which a uninsured motorist premium is paid. It tells the insured that for each automobile on which he pays a specific premium for a specified coverage, he gets the protection described in the policy. Four separate premiums are listed for uninsured motorist coverage and, thus, by the terms of this part of the policy, O'Hanlon has purchased four sets of the uninsured motorist coverage described in the Delaware uninsured motorist endorsement, that is, four sets of the $10,000 per person per accident coverage or $40,000 worth of protection.

I have considered whether the "other insurance" clause of the endorsement qualifies the provision of the Declaration Sheet

---

**7.** I note that the language of Condition 4, which refers to insured vehicles, is ill-suited to uninsured motorist coverage which insures persons rather than vehicles.

so as to reduce the coverage under each of the O'Hanlon automobiles proportionately by the number of cars covered. The "other insurance" clause provides in pertinent part:

. . . [I]f the insured has other insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

■ If O'Hanlon had four separate policies, one for each of his vehicles, as explained above,[8] this clause would allow the insurance companies insuring each car to contribute only a *pro rata* share of the damages up to the highest limit of liability applicable to any one of the cars.[9] But, I agree with Judge Taylor's conclusion in *Goodman v. Continental Casualty Company, supra,* 347 A.2d at 665–66, that this other insurance clause can most reasonably be read to apply only to other policies of insurance and not to separate coverages afforded by this policy.

The most reasonable construction of the policy documents as a whole is that four uninsured motorist coverages were issued by the Declaration Sheet, each having the limits of liability specified in the uninsured motorist endorsement. The most that can be argued from Hartford's point of view is that there are two conflicting statements in the policy which are relevant to the stacking issue. Since the insured is entitled to

take advantage of the language most favorable to him, under either view O'Hanlon is entitled to "stack" the uninsured motorist coverages under Hartford Policy 39GA632461.[10]

## XIM POLICY

In addition to the policies already discussed, Patrick O'Hanlon contracted with INA for a policy of personal catastrophe insurance, policy XIM 308280. This is what is known as an excess insurance policy. Its several different kinds of coverage pick up where certain specified underlying policies or "retained limits" leave off. As written, this policy provides automobile liability insurance of $1,000,000, subject to retained limits of $100,000 per person, $300,000 per accident. It also provides $35,000 in uninsured motorist coverage, subject to a retained limit which amounts to a minimum of $10,000 per person. Plaintiff contends that this excess policy is subject to the dictates of Section 3902 and that he was not offered the opportunity to purchase additional uninsured motorist coverage as he asserts the statute requires. He asks that the policy be reformed to give him coverage up to $300,000 for personal injury or death, the maximum uninsured motorist coverage the statute requires an insurer to offer.

The defendant concedes that additional uninsured motorist coverage was not offered on the XIM policy but it argues that Section 3902 does not apply to excess insurance policies. It also contends that the ultimate issue of whether, if offered, plaintiff would have purchased additional uninsured motorist coverage is a disputed fact issue inappropriate for resolution on a motion for summary judgment.

8. *Supra,*

9. For example, if each of the hypothetical four policies had the minimum coverage, $10,000, the recovery on each policy would be $10,000 ÷ 4 or $2,500. O'Hanlon's total recovery would be $10,000.

10. Hartford could have avoided this result easily enough either by charging a single premium for uninsured motorist coverage geared to the number of cars insured under the policy, as it did in the policy issued to Erin, Inc., one of

O'Hanlon's businesses, or by using language similar to that used by INA in the South Carolina uninsured motorist endorsement:

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) *highway vehicles to which this insurance applies.* [Emphasis added].

 Defendant is correct, however, that the issue of whether the policy should be reformed must await a trial of the disputed fact question of whether O'Hanlon would have accepted the higher limits of coverage. Moreover, I conclude that the difficult issues of whether Section 3902 has any application to the XIM policy and, if so, how it should be applied in the context of this case should also await a fuller development of the record.

If literally read, Section 3902 applies to all liability policies insuring Delaware motor vehicles and the XIM policy is clearly such a policy. On the other hand, a literal application of the requirements of the statute in the context of excess insurance seems to the Court to pose a number of thorny problems. It is possible, as INA argues, that a fully developed record on the marketing practices which existed in the industry at the time of the enactment of the statute might suggest a legislative intent to limit its operation to primary policies. At a minimum, such a record should be helpful in determining how the statute, if applicable, could practically be applied in the excess insurance area.

In addition, it is not clear to me that, if INA breached a duty under Section 3902 in issuing the XIM policy, the consequences of that breach can be determined without further development of the facts regarding similar alleged breaches by the issuers of primary policies.

For these reasons, I decline to rule on the issues tendered by the parties regarding the XIM policy.

## CAL POLICY

 INA policy CAL 15 38 48 is a commercial automobile liability policy issued to Coe Management Company. Coe Management is a name under which Patrick O'Han-

lon conducts some of his business activities. It is not a corporation, partnership or other separate legal entity. It is merely a name which O'Hanlon adopted for trade purposes.

At the time of Brian's accident, the CAL policy included no uninsured motorist coverage and the defendant concedes that it failed to meet its obligation under Section 3902 to offer that coverage.[11] It is plaintiff's position that, if the uninsured motorist coverage had been offered and accepted, the injuries to Brian O'Hanlon would be compensable under the policy. He arrives at that conclusion by a multi-step argument. First, he contends that Coe Management and Patrick O'Hanlon are one and the same. He then points out that all forms for insurance policies issued in Delaware must receive prior approval of the State Insurance Commissioner. INA had only one approved form for uninsured motorist coverage at the time it issued the CAL policy and that form covered the named insured and members of the named insured's family residing in the same household. Brian lived at home with Patrick O'Hanlon and, thus, according to this line of argument, he would have been covered by the uninsured motorist insurance INA should have offered.

I accept plaintiff's underlying thesis that the insurance company should not be permitted to benefit from the breach of its duty to offer Coe Management uninsured motorist coverage. If INA would have had to compensate O'Hanlon had it in fact done what the law required of it, the policy before the Court would be reformed to provide that coverage.[12] The further issue to be resolved, however, is whether Patrick O'Hanlon was the named insured or whether, for this purpose, O'Hanlon must be distinguished from Coe Management.

At the time of Brian's accident, the only vehicle named on the CAL policy was a

---

11. Pointing out that ordinarily anyone riding in a business vehicle would be covered by workmen's compensation if hit by an uninsured driver, INA says that there is no reason to provide uninsured motorist coverage on a commercial policy but it acknowledges that the statute makes no exception for such policies.

12. I assume for present purposes that the plaintiff would be able to prove at trial that he would have accepted the coverage.

1973 GMC pickup truck. The only purpose of use listed for that vehicle on the Declaration Sheet was business. Patrick O'Hanlon's name appears nowhere on the policy. The hazards for which the liability portion of the policy were written were those associated with the operation of a business vehicle. All of that is consistent with O'Hanlon's admitted purposes in obtaining the policy. The policy was issued in the name of Coe Management at his behest and the reason for that was that the truck was to be used exclusively for his business. An employee who was on call around the clock kept the truck at all times and he was instructed to use it only for the business.

Given these undisputed facts, I do not think that the CAL policy can properly be extended to protect persons and activities O'Hanlon never intended to protect.

Coe Management is a device O'Hanlon used to segregate his personal property and accounts from his business property and accounts and it is true to his intention and to the policy of insurance he bought to acknowledge that device here. O'Hanlon in his individual capacity was not a "named insured" under the policy and Coe Management, as a business entity, had no household of which Brian was a member. Accordingly, I conclude that Brian's injuries would not have been covered by the CAL policy even if INA had offered and O'Hanlon had accepted an uninsured motorist endorsement on the then existing INA form.

## MISCELLANEOUS ARGUMENTS

Lastly, I address a miscellany of arguments relevant to one or more of the policies involved in this litigation. Only brief discussion of each is necessary.

I have held that the clause in several of the policies before the Court in this litigation that would bar recovery for Brian O'Hanlon's injuries because there was no physical contact between the hit-and-run vehicle and the car in which O'Hanlon was riding was inconsistent with the policy of the Delaware uninsured motorist statute and, therefore, void. Plaintiff now invites the Court to decide whether Section 3902 is applicable to accidents involving underinsured as well as uninsured vehicles. Because of my ruling on the "physical contact" clause issue, it is unnecessary to reach the question and I decline to speculate unnecessarily about unsettled matters of state law.

Next, defendant INA advances the proposition, applicable to virtually all of the policies before the Court, that the provision of Section 3902(b) that each insured "shall be offered" the option to purchase coverage above the levels set by the financial responsibility laws does not oblige carriers to affirmatively inquire whether an insured wants the coverage. INA asserts that the carrier must merely make it available should the insured ask for it. I cannot accept that construction of the statute.

The purpose of Section 3902 was to promote and encourage uninsured motorist coverage. If the insurer's only duties are to provide minimum coverage in the policy form and to make increased coverage available to those who specifically inquire about it, the statutory purpose would be poorly served. I conclude that the legislature intended more. Under Section 3902, it is an insurer's duty to come forward and inform the insured of the limits of uninsured motorist coverage available.

Finally, INA argues that Donald Smith and Company, the insurance agent from whom O'Hanlon purchased the CAL policy, was acting as O'Hanlon's agent rather than INA's agent when it negotiated the policy. INA acknowledges that Smith has been authorized to sell insurance for INA for more than seven years. Under Delaware law:

Every agent who solicits or negotiates an application for insurance of any kind shall, in any controversy between the insured or his beneficiary and the insurer, be regarded as the agent of the insurer and not of the insured or his beneficiary.

. . . .

18 Del.C. § 1702. This provides a complete answer to INA's contention. INA is responsible to O'Hanlon for any failure to provide the statutorily mandated coverage.

CONCLUSIONS

In summary, the Court concludes that (1) the policy provisions intended to limit uninsured motorist coverage to accidents involving physical contact violate Delaware law and are void; (2) the "other insurance" clauses of the policies are valid and enforceable; (3) Hartford Policy 39GA632461, as written, provides $40,000 of uninsured motorist coverage; (4) INA has no liability to O'Hanlon under its CAL 15 38 48 Policy as a result of the injuries to his son; (5) Delaware law imposes upon one who issues liability insurance with respect to a Delaware vehicle duty to advise the insured of the availability of uninsured motorist coverage up to the limits of his liability coverage or $300,000, whichever is less, and (6) that any failure of Donald Smith and Company to satisfy the requirements of 18 Del.C. § 3902 in connection with the issuance of INA policies is chargeable to that carrier.

Submit order.