**Clyde B. CHESERONI, Executrix of the Estate of Richard M. Cheseroni, et al., Plaintiffs,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted Jan. 26, 1979.

Decided June 5, 1979.

James F. Kipp of Trzuskowski & Kipp, Wilmington, for plaintiffs.

Wayne N. Elliott of Prickett, Sanders, Jones, Elliott & Kristol, Wilmington, for defendant.

O'HARA, Judge.

Richard Cheseroni was killed and his minor daughter, Michelle, injured when the motorcycle on which they were riding was struck by another vehicle on September 5, 1976. The vehicle which struck the Cheseroni motorcycle was not covered by an insurance policy. Cheseroni's motorcycle was insured by defendant under a policy which included uninsured motorist coverage with maximum limits of $10,000 for each person and $20,000 per accident. Two automobiles owned by Cheseroni were insured by defendant under a separate policy containing the same uninsured motorist coverage.

Plaintiff, Clyde B. Cheseroni, as executrix of the estate of her deceased husband and as next friend of Michelle, brought this action for a declaratory judgment, seeking, inter alia, to cumulate or "stack" the uninsured motorist coverages under the two policies. Defendant has filed a motion for summary judgment on the "stacking issue." For the purposes of the present motion, liability for the death and injuries is attributed to the uninsured motorist, and it is assumed that damages exceeded the minimum $10,000 per person/$20,000 per accident figures.

Plaintiff asserts that the "anti-stacking" language of the insurance policy is ambiguous and does not rule out stacking of coverage between two policies. Further, assuming that the anti-stacking clause does bar stacking of coverage where two vehicles are covered under one policy (as in the case of decedent's two automobiles), plaintiff attacks this provision as a violation of 18 Del.C. § 3902, which mandates uninsured motorist coverage. Because of the Court's resolution of the first issue raised by plain-

tiff, the latter contention need not be considered.

Both policies obtained by plaintiff from defendant contained an endorsement as part of the insurance contract. Among the provisions, under section III "Limits of Liability," was the following:

"(f) *The affording of insurance to more than one person or to more than one highway vehicle shall not operate to increase the limit of the Company's liability.* When two or more highway vehicles are insured hereunder, the limits of liability shall apply separately to each highway vehicle as stated in the declarations but shall not exceed the highest limit of liability applicable to any one highway vehicle."

Plaintiff argues that the second sentence, by use of the word "hereunder," restricts the application of the first sentence to situations where multiple vehicles are covered under *one policy* (and thus, by implication, excludes or creates an ambiguity as to coverage of multiple vehicles under multiple policies, as here). This is simply not the case. The meaning of the emphasized language is clear, and is simply applied, in the latter sentence, to the most common situation: coverage of two or more vehicles under a single policy. There is nothing to suggest a limitation to these circumstances only, and no ambiguity is raised by the failure of the endorsement to apply the rule to every possible situation.

It is true, as plaintiff asserts, that exclusionary terms in a policy must be strictly construed, but before this rule finds application, there must be ambiguity triggering construction. *Callaway v. Nationwide Mutual Insurance Company,* Del.Super., 248 A.2d 617 (1968). Ambiguity only exists where two or more reasonable interpretations are possible. *Id.*

Of course, a single clause or paragraph of a contract cannot be read in isolation, but must be read in context, *Hudson v. D & V Mason Contractors, Inc.,* Del.Super., 252 A.2d 166 (1969), and every portion of

the contract deserves consideration. *Wooleyhan v. Green,* Del.Super., 155 A. 602 (1931).

However, contrary to plaintiff's view, ambiguity does not arise from the introductory language of the endorsement, even when read in conjunction with the declarations. The fact that the premiums paid were attributable to each vehicle covered under the respective policies does not render the anti-stacking clause meaningless. The contract is not only "in consideration of the payment of premium," but also "subject to all of the provisions of this endorsement and to the applicable provisions of the policy." Where a separate premium is paid for each uninsured motorist coverage, the benefits may be restricted contractually so long as this is done in a clear and unambiguous manner. *Goodman v. Continental Casualty Company,* Del.Super., 347 A.2d 662 (1975).

The present case can be distinguished factually from *O'Hanlon v. Hartford Acc. & Indem. Co.,* D.Del., 439 F.Supp. 377 (1977) in two respects. First, the insured in *O'Hanlon* attempted to stack coverages on four automobiles under *the same policy.* Second, Judge Stapleton found the policy terms to be "most ambiguous on this point," and the rules of construction dictated a holding permitting stacking. The *O'Hanlon* policy lacked an anti-stacking provision applicable to uninsured motorist coverage such as that in the Cheseroni policy (quoted, supra). Furthermore, the *O'Hanlon* policy contained a provision linking extent of coverage to amount of premium.

The language of the provision cited here is clear, unambiguous, and not contradicted by the balance of the policy. The Court is thus bound to give it effect. Defendant's motion for summary judgment as to the stacking issue should be granted.

IT IS SO ORDERED.