STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation of the State of Illinois, Defendant, Appellant,

v.

William E. HALLOWELL, individually and William E. Hallowell, as Administrator of the Estate of Frances Hallowell, deceased, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted Sept. 15, 1980.

Decided Oct. 21, 1980.

Reargument Jan. 15, 1981.

Decided Feb. 13, 1981.

F. Alton Tybout (argued), of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant, appellant.

David Roeberg (argued) and Frederick T. Haase, Jr., of Roeberg & Associates, P. A., Wilmington, for plaintiff, appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice.

This interlocutory appeal requires us to construe a Statute governing the "uninsured motorist" clause in a Delaware insurance contract. Specifically, the issue is whether the Superior Court erred, as a mat-

ter of law, in determining that, under 18 *Del.C.* § 3902, such a policy provision includes "under-insured motorist" coverage.[1] We conclude that the Trial Court's ruling was erroneous and, accordingly, reverse the judgment.

## I

The pertinent facts are these:

On November 2, 1975, William E. Hallowell (plaintiff) was injured and his wife died in an automobile accident in Delaware. The accident was caused by the driver of a different automobile who carried liability insurance with limits of $20,000 per person and $40,000 per accident.[2] For present purposes, it is conceded that plaintiff's damages exceeded those limits.

By virtue of 18 *Del.C.* § 3902,[3] each policy of automobile liability insurance issued in Delaware must provide uninsured motorist coverage, unless the insured rejects it in writing. The amount of such coverage must not be less than the minimum required by the State motorist financial responsibility laws. At the time of the accident, Delaware's Motor Vehicle Safety—Responsibility Law, 21 *Del.C.* § 2904,[4] mandated that every automobile liability policy issued in the State provide coverage of 10/20. By a 1971 amendment to § 3902(b),

1. Pursuant to Supreme Court Rule 42, we granted defendant leave to appeal from the Superior Court's interlocutory order granting plaintiff's motion for summary judgment.

2. In insurance parlance, that coverage is generally referred to as "20/40" coverage and we will use such an expression from time to time.

3. The Statute provides in part, as follows:

   "(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. Except, that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as 'uninsured vehicle coverage.'

   (b) The amount of coverage to be so provided shall not be less than the minimum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State. The coverage for property damage shall be subject to a $250 deductible for property damage arising out of any 1 accident unless the insurer and the insured agree in writing to a different deductible. Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy.

   As used herein, the term 'property damage' shall include the loss of use of a vehicle."

4. After the date of the accident in question, § 2904 was repealed and reenacted without change, but designated as § 2902. We will refer to the new designation (§ 2902). The Statute provides in part thus:

   "(a) A 'motor vehicle liability policy,' as said term is used in this chapter, shall mean an owner's or an operator's policy of liability insurance, certified, as provided in § 2948 or 2949 of this title, as proof of financial responsibility and issued, except as otherwise provided in § 2949 of this title, by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured.

   (b) Such owner's policy of liability insurance shall:

   (1) Designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

   (2) Insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $10,000, because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $20,000, because of bodily injury to or death of 2 or more persons in any 1 accident, and $5,000, because of injury to or destruction of property of others in any 1 accident."

however, an insured need not accept the minimum 10/20 uninsured motorist coverage but may purchase "additional coverage" up to the limits in the basic policy or $300,000, whichever is less.

Hallowell's automobile insurance policy, which had been issued by State Farm Mutual Automobile Insurance Company (defendant), contains uninsured motor vehicle coverage of $100,000 per person (100/300) as permitted by the "additional coverage" amendment to § 3902(b). The policy provides that State Farm shall pay to plaintiff-insured "all sums which the *insured* ... shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* ... caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle*." (Emphasis in the original.) The policy defines an "uninsured motor vehicle" as a motor vehicle with respect to which "there is, in at least the amounts specified in the Delaware Motor Vehicle Safety Responsibility Law, neither (i) cash or securities on file ... nor (ii) a bodily injury ... insurance policy, applicable at the time of the accident with respect to any *person* ... legally responsible for the use of such automobile ...." (Emphasis in the original.)

Both parties agree that, under the terms of Hallowell's policy, the uninsured motorist coverage protects him, not only when a tortfeasor fails to carry liability insurance, but also when a tortfeasor carries liability insurance in amounts less than 10/20, as required by 21 *Del.C.* § 2902. The dispute between the parties arises over whether § 3902 requires such uninsured motorist coverage to provide greater protection than the policy issued by State Farm afforded plaintiff.

Hallowell brought suit in Superior Court seeking a declaratory judgment in which he alleged a right to recover on his policy on this theory: under § 3902(c), the tortfeasor's automobile was an "uninsured mo-tor vehicle" which triggered application of the uninsured motorist coverage because the tortfeasor's liability insurance equalled or exceeded the 10/20 minimum, but (a) it was less than damages sustained, and (b) it was less than the amount of uninsured motorist coverage purchased by him pursuant to the "additional coverage" amendment. Each party moved for summary judgment on the issue of whether, under the facts of the case, the tortfeasor's automobile was an "uninsured motor vehicle" within the meaning of § 3902 entitling plaintiff to recover against State Farm.[5]

The Superior Court granted plaintiff's motion and denied defendant's; it held that the tortfeasor's automobile was an "uninsured motor vehicle" because the coverage thereon was short of the amount purchased by the insured and § 3902 requires protection on those facts. And, since the protection under the policy issued by State Farm was short of such statutory requirement, it was legally inadequate; the result is that, under the Superior Court ruling, plaintiff may recover to the extent of his damages and up to the limits of his policy (100/300).

\* \* \*

Before discussing the law, it may be helpful at this time to summarize certain of the significant points: Thus—

Hallowell was injured (in both of the capacities in which he sues) by a tortfeasor who had only 20/40 coverage. Hallowell's damages exceed that coverage. Under his own policy, which had been issued by State Farm, Hallowell had purchased 100/300 uninsured motor vehicle coverage. The Superior Court ruled, in effect, that § 3902(b) requires that the 100/300 limits cover Hallowell under the facts of this case. That is the ruling which is on appeal.

## II

We hold that the Superior Court erred as a matter of law in construing

---

**5.** The Superior Court determined a second issue in favor of plaintiff which is not before us, namely, whether a release executed by plaintiff to the tortfeasor barred the claim made in this action against defendant.

§ 3902. We conclude that an "uninsured motor vehicle" policy clause triggers application of an insured's uninsured motorist coverage in full when the tortfeasor has no insurance and it activates such coverage in part (by the amount a tortfeasor's insurance falls short of the minimum required coverage) when the tortfeasor has some insurance but less than the minimum required by 21 *Del.C.* § 2902. Under the facts of this case, an *under* insured motorist is not an *un* insured motorist by virtue of either the policy issued by State Farm to Hallowell or by § 3902.

### A.

While noting that an "uninsured motor vehicle" is not defined in § 3902, the Trial Court concluded that, by judicial construction, it means an automobile covered by liability insurance but in amounts less than the statutory minimum, as well as an automobile with no coverage. *Porter v. Empire Fire and Marine Insurance Company*, Ariz. Supr., 106 Ariz. 274, 475 P.2d 258 (1970); *Taylor v. Preferred Risk Mutual Insurance Company*, Cal.App., 225 Cal.App.2d 80, 37 Cal.Rptr. 63 (1964); *Palisbo v. Hawaiian Insurance & Guaranty Company, Limited*, Haw.Supr., 57 Haw. 10, 547 P.2d 1350 (1976); *Carrignan v. Allstate Insurance Company*, N.H.Supr., 108 N.H. 131, 229 A.2d 179 (1967); *Allstate Insurance Company v. Fusco*, R.I.Supr., 101 R.I. 350, 223 A.2d 447 (1966); 26 *A.L.R.3d* 894. The Trial Judge observed that the full amount of uninsured motorist coverage purchased by an insured is recoverable (to the extent of damages) when a tortfeasor carries *no* insurance, but only a part of such coverage may be reached when a tortfeasor has some insurance but less than the statutory minimum: to wit, the amount of the tortfeasor's insurance deficiency. The rationale for this interpretation of "uninsured motorist" to include underinsured motorists in certain situations, and its corresponding limitation on the amount recoverable, was

stated by Judge Stapleton in *O'Hanlon v. Hartford Accident and Indemnity Company*, D.Del., 439 F.Supp. 377 (1977), in this way:

"Thus, reading the two statutes together [18 *Del.C.* § 3902 and 21 *Del.C.* § 2902], I conclude that Section 3902 creates a scheme whereby any individual who does not expressly opt out in writing will be assured of the same minimum pool of resources from which to seek compensation for injuries inflicted by an uninsured motorist as he would have in the event of injuries inflicted by a person having the minimum coverage permitted under Delaware law—that is, $10,000."

439 F.Supp. at 383.

Using as a starting point the fact that "uninsured motor vehicle" refers to an automobile which is underinsured in some situations,[6] the Superior Court determined that there is not a clear dividing line between non-insured motorists and underinsured motorists in the phrase, "uninsured motor vehicle" in § 3902(c). So, the Court reasoned, an ambiguity exists when § 3902 is applied to the facts in the instant case.

The Court identified the ambiguity as follows: "While the statute specifies the amount of uninsured coverage protection [a minimum of $10,000 to a maximum of $300,000], it does not specify the minimum tortfeasor liability coverage below which the 'uninsured' coverage is activated" when the insured has purchased "additional coverage" against uninsured motorists under the 1972 amendment to § 3902(b). In the Trial Judge's view, the ambiguity is susceptible of two interpretations: (1) the dividing line is the minimum coverage required by 21 *Del.C.* § 2902 (10/20) and thus if a tortfeasor (as here) carried more than the minimum coverage on his automobile, it is not an "uninsured motor vehicle"; and (2) the dividing line is the amount of the "additional coverage" purchased so that under the facts of this case the tortfeasor's auto-

---

**6.** In addition to the situation in which a tortfeasor's coverage is less than the statutory minimum, the Court noted that § 3902(c) provides that "uninsured motor vehicle" also includes

one on which insurance is carried but because the insurer is insolvent at the time of the accident no payment can be made, a situation in which the tortfeasor is not literally uninsured.

mobile is an "uninsured motor vehicle" entitling plaintiff to recover under his policy. The Court accepted the latter view on the ground that the objective of the Statute is to "protect innocent, injured persons who are unable to obtain recompense from tortfeasors" and because no reasonable justification had been advanced for protecting against uninsured motorists but not against *underinsured* motorists.

In our view, such analysis voids the plain language of the Statute. Under 18 *Del.C.* § 3902(a), the uninsured motorist provision of an insured's policy must provide "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured* or hit-and-run motor vehicles ...." (Emphasis added.) The only meaning of this language is that it protects the injured against the risk presented by a tortfeasor who carries no insurance.[7] It is true that some Courts have judicially construed similar statutes to also require protection against a tortfeasor who carries some insurance but less than the statutory minimum but, the fact that under those circumstances a tortfeasor can be said to be "underinsured" does not compel the conclusion that the phrase ("uninsured motor vehicle") is ambiguous and that whenever a tortfeasor can be labeled "underinsured," the insured has a right to recover. The short of it is that we find no ambiguity in § 3902;[8] uninsured motorist coverage provides protection only when the tortfeasor is uninsured and, as judicially construed, when the tortfeasor carries liability insurance in amounts less than the statutory minimum. Nothing more is required under the Statute.

This determination is consistent with cases in other jurisdictions construing similar statutes.[9] Moreover, judicial construction has not altered the meaning of "uninsured motor vehicle"; it has merely provided the insured with a minimum pool of resources in order to serve the purposes of both 18 *Del.C.* § 3902 and 21 *Del.C.* § 2902. See *O'Hanlon,* supra. This view is supported by the fact that when a tortfeasor has insurance but less than the statutory minimum, the insured may recover under his uninsured motorist provision only up to the statutory minimum, not to the full extent of his coverage. In this case, the tortfeasor provided plaintiff more than the minimum pool of resources by carrying 20/40 coverage on his automobile which, therefore, is not an "uninsured motor vehicle" within the plain meaning of that phrase.

It follows, then, that the Superior Court erred when it determined that, under § 3902, an uninsured motorist policy provides coverage to an insured, to the policy limits, if the tortfeasor has limits in excess of the statutory minimum.

**B.**

■ In addition to relying on the reasoning of the Superior Court, plaintiff also

---

**7.** The dictionary meaning of "uninsured" is short and singular: it means "not insured." *Webster's Third New International Dictionary* (unabridged). By Statute, we are mandated to read words in context and construe them "according to the common and approved usage of the English language." 1 *Del.C.* § 303.

**8.** Compare *Apotas v. Allstate Insurance Company,* Del.Supr., 246 A.2d 923 (1968), in which this Court held that a policy provision providing for coverage of an insured if the tortfeasor did have "bodily injury liability insurance applicable at the time of the accident" could not be *construed* to permit coverage when such a policy was in force at the time of the accident but the carrier thereafter became insolvent. *Apotas* was decided before § 3902 was enacted.

**9.** *Wilbourn v. Allstate Insurance Company,* Ala.Supr., 293 Ala. 466, 305 So.2d 372 (1974); *Simonette v. Great American Insurance Company,* Conn.Supr., 165 Conn. 466, 338 A.2d 453 (1973); *Detrick v. Aetna Casualty and Surety Company,* Iowa Supr., 261 Iowa 1246, 158 N.W.2d 99 (1968); *Peacock v. Harper,* Nev. Supr., 600 P.2d 223 (1979); *Travelers Indemnity Company v. Stearns,* N.H.Supr., 116 N.H. 285, 358 A.2d 402 (1976); *Gorton v. Reliance Insurance Company,* N.J.Supr., 77 N.J. 563, 391 A.2d 1219 (1978); *Shelby Mutual Insurance Co. v. Smith,* Ohio Supr., 45 Ohio St.2d 66, 341 N.E.2d 597 (1976); *Ziegelmayer v. Allstate Insurance Company,* R.I.Supr., 403 A.2d 653 (1979).

asserts that the amendment to § 3902(b) [10] was intended to broaden the scope of § 3902(a). Specifically, he argues that "additional coverage" in the amendment refers to coverage of risks in addition to those protected by § 3902(a), namely, the risk to an insured when a tortfeasor carries more than the statutory minimum but less than the insured's damages and policy limits. We find no justification for this expansive interpretation; indeed, the plain meaning of that language, within the context of subparagraph (b), is that the amendment simply allows an insured to purchase higher limits of uninsured motorist coverage than is required under that Section. Our reading of the amendment and its legislative history does not indicate an intent to affect § 3902(a). Even though an insured chooses higher limits of coverage, as permitted by the amendment to § 3902(b), that protection is still triggered only when a tortfeasor is deemed "uninsured." Thus, the amendment does not affect our reading of "uninsured motor vehicle" in § 3902(a). *O'Hanlon v. Hartford Accident and Indemnity Company*, D.C., 457 F.Supp. 961, 965 (1978).

Plaintiff also contends that the cases from other jurisdictions, which support our view of § 3902, are distinguishable because the Statutes construed in those cases did not contain the "additional coverage" language in the amendment to § 3902(b). In light of our holding that the amendment refers only to higher limits of coverage and does not alter the application of § 3902(a), plaintiff's distinction does not affect the significance of those cases to the issue before us.

Finally, starting with the premise that the purpose of § 3902 as originally written was to provide an insured with a minimum pool of resources, plaintiff says that the purpose and effect of the amendment, which allows the purchase of "additional coverage," is to give an insured an option to choose a higher minimum pool of resources. Since plaintiff purchased 100/300 coverage,

the argument goes, that became his minimum pool of resources to which he is entitled regardless of the amount of coverage owned by the tortfeasor. This argument might be persuasive if we could find an intent on the part of the Legislature to change the meaning of "uninsured motor vehicle" which activates the uninsured motorist coverage. We are unable to do so, however, and so we can only restate our conclusion that the amendment to § 3902(b) has no effect on the meaning of "uninsured motor vehicle" when derived from a reading of § 3902(c) in conjunction with 21 *Del.C.* § 2902.

### III

We have given the Statute the meaning which is required, as we understand the law, but we certainly are not satisfied with the result. It appears that the General Assembly in making one needed reform did not contemplate a second area deserving remedial action. The effect of § 3902, as written, is to put an insured in a better position when he is injured by a tortfeasor carrying no automobile liability insurance than when he is injured by a tortfeasor carrying the mandatory minimum required by Statute. As the Superior Court made clear, that is an anomalous result. It is, at a minimum, poor public policy. And, for that reason, it should be changed promptly, but it is not within the power of the Court to amend clear statutory language. *du Pont v. Mills*, Del.Supr., en banc, 196 A. 168 (1937); *Chrysler Corporation v. State*, Del. Supr., 163 A.2d 239 (1910). The amending responsibility belongs to the General Assembly and we invite its early attention to the need for reform.

Reversed and remanded for proceedings consistent with this opinion.

Upon Motion for Reargument.

Plaintiff filed under Rule 18 a motion for reargument, contending that, (a) the Court's literal reading of 18 *Del.C.* § 3902 produces a result which creates an ambigui-

---

**10.** The 1972 amendment to § 3902(b) added the following sentence: "Each insured shall be offered the option to purchase additional cover-age for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy."

ty calling for statutory construction; (b) the Court erred in failing to find an intent on the part of the General Assembly to change the meaning of "uninsured motor vehicle" as a result of the 1971 amendment to § 3902(b); and (c) the Court should authorize a legislative facts hearing to ascertain the Legislative intent of the 1971 amendment to § 3902(b). Reargument was denied as to contentions (a) and (b) because they were deemed to be without merit. Reargument was, however, ordered as to contention (c), and counsel filed supplemental briefs and orally argued the issue.

Plaintiff relies largely if not exclusively on *O'Hanlon v. Hartford Acc. & Indem. Co.*, D.Del., 457 F.Supp. 961 (1978), a diversity case in which Delaware law was applied. There, Judge Stapleton ordered a "legislative facts hearing" and, after it was held, he wrote as follows:

"Legislative facts are 'those which have relevance to legal reasoning and the law-making process, whether in the formulation of a legal principle or ruling by a judge ... or in the enactment of a legislative body.' Advisory Committee Notes to Federal Rule of Evidence 201. The Federal Rules of Evidence prescribe no procedure by which courts are to go about receiving information regarding legislative facts, but the approach discussed there 'leave[s] open the possibility of introducing evidence through regular channels in appropriate situations.' Advisory Committee Notes to Federal Rule of Evidence 201."

The Court also noted a somewhat different definition of such a hearing adopted in 2 Davis, *Administrative Law Treatise* (1958) § 15.03: thus,

"Legislative facts are the facts which help the tribunal determine the content of law and of policy and help the tribunal

to exercise its judgment or discretion in determining what course of action to take. Legislative facts are ordinarily general and do not concern the immediate parties."

To our knowledge, the kind of evidentiary hearing described in *O'Hanlon* and in the *Davis* treatise has not been ordered by a Delaware Court. We recognize that such a hearing may well be a valuable vehicle for a Court endeavoring to inform itself as to legislative intent when the construction of a statute is at issue.[1] And that may be particularly true when, as plaintiff argues, there is not a legislative history of the Statute and/or it is part of an Act regulating a significant industry or commercial activity.

But, we conclude that such a hearing should not be ordered in this case. The Statute, 18 *Del.C.* § 3902, is clear and, under settled Delaware law, our duty is to apply it. The best which plaintiff could hope to achieve as the result of such a hearing would be an ambiguity leading to a different result, and that would be contrary to the plain language of § 3902.

We have made it plain that, in our judgment, the present statutory law embodies poor public policy, in the sense that one who is injured by the negligence of an *under* insured motorist should have the same benefits under his own policy of insurance as he would have if injured by the negligence of an *un* insured motorist. But we cannot say (as a matter of law) that the present statutory scheme is either "absurd" or "nonsensical," as plaintiff argues.

---

1. Rule 201 of The Delaware Uniform Rules of Evidence tracks F.R.E. 201. The Comment states that

   "[i]n the interests of uniformity, the Committee rejected a proposal that this rule be expanded to cover legislative facts. See Davis, 'Judicial Notice,' reprinted in Weinstein, p. 201–22; McCormick §§ 328, 331; F.R.E. Advisory Committee's note to article II.

   The Committee recognized that courts sometimes judicially recognize legislative facts without giving the parties an opportunity to comment on the facts proposed to be judicially noticed. While recognizing that this may sometimes be unfair, the Committee did not think it should address this problem at this time."