William E. HALLOWELL, individually, and William E. Hallowell, as Administrator of the Estate of Frances Hallowell, deceased, Plaintiff, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation of the State of Illinois, Defendant, Appellee.

Supreme Court of Delaware.

Submitted Jan. 12, 1982.

Decided March 2, 1982.

David Roeberg (argued) and Frederick T. Haase, Jr., of Roeberg & Associates, P. A., Wilmington, for plaintiff-appellant.

F. Alton Tybout (argued), of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant-appellee.

Before HERRMANN, C. J., and DUFFY and HORSEY, JJ.

DUFFY, Justice:

This is the second appeal in this case which centers on a controversy involving the "uninsured motorist" clause in a Delaware insurance contract. All of the pertinent facts, the statutes and the history of the litigation are reported in our prior opinion, *State Farm Mutual Automobile Insurance Company v. Hallowell*, 426 A.2d 822 (1981), to which reference is made.

Under our first opinion, the case was remanded to the Superior Court, which thereafter granted a motion by State Farm Mutual Automobile Insurance Company (defendant) for summary judgment against its insured, William E. Hallowell (plaintiff). Hallowell has appealed from that ruling, raising four separate arguments the gravaman of which is that he is entitled to judgment, or a factual trial, based upon the doctrine of "reasonable expectations" as announced by this Court in *State Farm Mutual Automobile Insurance Company v. Johnson*, Del.Supr., 320 A.2d 345, 347 (1974).

I

Because an insurance policy is an adhesion contract and is not generally the result of arms-length negotiation, courts have developed rules of construction which differ from those applied to most other contracts.

As a general rule, for example, an insurance contract is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted. *Steigler v. Insurance Co. of North America*, Del.Supr., 384 A.2d 398, 400 (1978); *Novellino v. Life Ins. Co. of North America*, Del.Supr., 216 A.2d 420, 422 (1966). This rule is not applicable, however, unless there is some ambiguity in the policy language; in other words, if the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them. *Apotas v. Allstate Insurance Co.*, Del.Supr., 246 A.2d 923, 925 (1968); *Novellino, supra,* 216 A.2d at 422. Moreover, when the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented. *Apotas, supra,* 246 A.2d at 925; *Lamberton v. Travelers Indemnity Company*, Del.Super., 325 A.2d 104, 106 (1974), *aff'd*, 346 A.2d 167 (1975). And an ambiguity exists when the language in a contract permits two or more reasonable interpretations. *Cheseroni v. Nationwide Mutual Insurance Company*, Del.Super., 402 A.2d 1215, 1217 (1979), *aff'd*, 410 A.2d 1015 (1980); *Lamberton, supra,* 325 A.2d at 106.

From these general rules of construction we now move to the concept which is at issue in this appeal.

II

In recent decades, a doctrine has emerged in insurance law which, in essence, states that an insurance policy should be construed "to effectuate the reasonable expectations of the average member of the public who buys it...." *Kievit v. Loyal Protective Life Insurance Company*, N.J.Supr., 34 N.J. 475, 170 A.2d 22, 30 (1961). *See also, Davenport Peters Co. v. Royal Globe Insurance Co.*, D.Mass., 490 F.Supp. 286, 291 (1980); and Keeton, *Insurance Law Rights at Variance With Policy Provisions*, 83 Harv.L.Rev. 961, 962 (1970).

That doctrine was accepted by this Court in *Johnson, supra*, wherein we stated as follows:

"Although some jurisdictions continue to describe insurance contracts as agree-

ments to which the parties have voluntarily bound themselves with knowledge of strict policy provisions, we now follow New Jersey's lead in recognizing '. . . that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser *so far as its language will permit.*' "

320 A.2d at 347 (emphasis added) quoting from *Cooper v. Government Employees Ins. Co.*, N.J.Supr., 51 N.J. 86, 237 A.2d 870, 873 (1968). Since its adoption, the principle has been recognized or applied by this Court in *Steigler, supra,* 384 A.2d at 401, and in *Megee v. United States Fidelity and Guaranty Company,* 391 A.2d 189, 192 (1978).

■ As we explicitly stated in *Johnson, supra,* a fundamental premise of the doctrine is that the policy will be read in accordance with the reasonable expectations of the insured "so far as its language will permit." 320 A.2d at 347. Thus, the rule, as recognized by this Court, is consistent with the general rules of construction, to which we have referred, that is, the Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.

### III

Turning now to Hallowell, he contends that the uninsured motorist provisions in his contract with State Farm are ambiguous but, even if they are not, he is entitled to his reasonable expectations of coverage to the extent of the uninsured motorist policy limits, even though he was in fact injured by an "underinsured" motorist. See *Hallowell, supra,* 426 A.2d at 824. In support of his argument, Hallowell refers to cases in other jurisdictions, some of which are cited in the footnote,[1] that contain language suggesting that the doctrine is applicable in spite of clear and certain policy language.

■ With all due deference, we decline to extend the reasonable expectations doctrine as far as it has been taken in some other jurisdictions; to do so would, in our judgment, effectively overrule *Johnson* and almost a century of Delaware case law.[2] We are well aware of the complex and confusing nature of many insurance policies and of frequent admonitions by the courts to insurance companies to write clear and

---

1. For example, *Stordahl v. Govt. Emp. Ins. Co.,* Alaska Supr., 564 P.2d 63, 66 (1977); *C. & J. Fertilizer Inc. v. Allied Mut. Ins. Co.,* Iowa Supr., 227 N.W.2d 169, 176 (1975); *Storms v. United States Fidelity & Guaranty Co.,* N.H. Supr., 118 N.H. 427, 388 A.2d 578, 580 (1978); *Collister v. Nationwide Life Ins. Co.,* Pa.Supr., 479 Pa. 579, 388 A.2d 1346, 1353 (1978), *cert. den.,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); *but cf. Trombly v. Blue Cross/Blue Shield of N.H. Vt.,* N.H.Supr., 423 A.2d 980 (1980); *Cooper v. Govt. Emp. Ins. Co.,* N.J. Supr., 51 N.J. 86, 237 A.2d 870, 873 (1968); *Kievit v. Loyal Protective Ins. Co.,* N.J.Supr., 34 N.J. 475, 170 A.2d 22, 26 (1961); *Elliott Leases Cars, Inc. v. Quigley,* R.I.Supr., 118 R.I. 321, 373 A.2d 810, 812 (1977); *see also,* 13 Appleman, Insurance Law & Practice, § 7402 (1976).

2. In 1894 Chancellor Wolcott, for example, stated as follows:

"The policy, and the conditions therein, define or fix the relations between the parties thereto, and furnish the measure of their respective rights and liabilities. Courts cannot go outside of the agreements of parties to determine their mutual or reciprocal obligations. To do so would have the effect of imposing terms to which they had not assented, or absolving them from duties which they had voluntarily assumed. It is the province of courts to interpret, and not to make, contracts,—to ascertain the legal import of the language employed by the parties themselves to express their agreements, and not to add to or take from, in order to make ideal contracts."

*Dover Glass Works Co. v. American Fire Ins. Co.,* Del.Err. & App., 29 A. 1039, 1041 (1894).

unambiguous policies that can be understood by an average insured. But we have consistently held that an insured has a duty to read his insurance policy and he is bound by the provisions thereof if they are clear and unequivocal. Given our law as we find it now, we conclude that the Court should not rewrite an insurance policy nor ignore its clear and certain terms. *See e.g., Novellino, supra,* 216 A.2d at 422; and *Apotas, supra,* 246 A.2d at 925. Therefore, we hold that the doctrine of reasonable expectations is applicable in Delaware to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is written in large print.

### IV

In the prior appeal we focused on the language of 18 *Del.C.* § 3902 which basically provides that each automobile liability insurance policy issued in this State must offer uninsured motorist coverage. The Superior Court had reasoned that because statutes (in other states) requiring uninsured motorist coverage had been construed to apply to injuries caused by a motorist who was insured for less than the statutory minimum, an ambiguity existed as to the meaning of the term "uninsured motorist." In response to that reasoning we wrote, as follows:

"It is true that some courts have judicially construed similar statutes to also require protection against a tort feasor who carries some insurance but less than the statutory minimum but, the fact that under those circumstances a tort feasor can be said to be 'underinsured' does not compel the conclusions that the phrase ('uninsured motor vehicle') is ambiguous and that whenever a tort feasor can be labeled 'underinsured,' the insured has a right to recover. The short of it is that we find no ambiguity in § 3902; uninsured motorist coverage provides protection only when the tort feasor is uninsured and as judicially construed, when the tort feasor carries liability insurance in amounts less than the statutory minimum. Nothing more is required by the Statute."

426 A.2d at 826.

■ Likewise, Hallowell's insurance policy in clear and unambiguous language provides the coverage that we found required by this Statute.[3] It follows that since the

---

3. Hallowell's policy contained the following language:

"SECTION III—UNINSURED MOTOR VEHICLE COVERAGE INSURING AGREEMENTS COVERAGE U–DAMAGES FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED BY UNINSURED MOTOR VEHICLES.

To pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* . . . caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle.*

. . . .

LIMITS OF LIABILITY–COVERAGE U.

(a) The company's limit of liability for all damages, including damages for care and loss of services, arising out of *bodily injury* sustained by one *person* in any one accident shall not exceed the amount stated in the declarations as applicable to 'each person'. Subject to this provision, the company's limit of liability for all such damages arising out of *bodily injury* sustained by two or more *persons* in any one accident shall not exceed the amount stated in the declarations as applicable to 'each accident'.

(b) The company's limit of property damage liability shall not exceed the amount stated in the declarations as applicable to 'each accident' for all damages in excess of $250 arising out of injury to or destruction of all property of one or more *insureds* as the result of any one accident.

. . . .

(d) Any amount payable hereunder because of *bodily injury* or *property damage* sustained in an accident by a *person* who is an *insured* under this coverage shall be reduced by

(1) all sums paid on account of such injury or damage by or on behalf of

(i) the owner or operator of the *uninsured motor vehicle* . . . .

. . . .

DEFINITIONS–COVERAGE U

Uninsured Motor Vehicle-means:

(1) a motor vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified in the Delaware Motor Vehicle Safety Responsibility Law, neither

language of the policy is not ambiguous, and does not contain a hidden trap or pitfall, the doctrine of reasonable expectations is not applicable. Thus the Superior Court properly concluded that judgment should be entered for defendant.

AFFIRMED.

In the prior opinion we emphasized that the result which must be reached under the present Statute is illogical and unfair, and we urged that the General Assembly consider corrective legislation. To date, that has not happened. The only thing we can do is to again call the matter to the Legislature's attention.

(i) cash or securities on file with the Delaware State Treasurer, nor

(ii) a bodily injury and property damage liability bond or insurance policy, applicable at the time of the accident with respect to any *person* or organization legally responsible for the use of such automobile, or there is a bodily injury and property damage liability insurance policy applicable at the time of the accident but the company writing the same has legally denied coverage thereunder or such policy is uncollectible in whole or in part because the company writing the same is insolvent or has been placed in receivership . . . ."

(Emphasis in original.)