**Donald J. WALSH, Plaintiff,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 84–620–JJF.**

United States District Court,
D. Delaware.

Dec. 31, 1985.

Frederick T. Haase, Jr., of Roeberg & Associates, Wilmington, Del., for plaintiff.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

FARNAN, District Judge.

Presently before the Court is Plaintiff Donald J. Walsh's (hereinafter "Walsh") Motion for Partial Summary Judgment on Count I of his Complaint against Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). In Count I, Walsh seeks a judgment declaring that he has $100,000 per person, $300,000 per accident, of uninsured/underinsured motorist insurance in two State Farm automobile insurance policies, Numbers 414 1879 A26 08B and 414 4574 E14 08B (hereinafter "State Farm Policies").[1] Walsh's claim presents the issue of whether or not State Farm complied with the mandate of 18 Del.C.Ann. § 3902(b)[2] which

---

1. The Walshes owned two State Farm automobile insurance policies. Policy number 414 1879 A26 08B was purchased on January 26, 1978, in the names of Dorothy A. Walsh and William P. Walsh, Jr. This policy covered a 1977 Oldsmobile Cutlass. Policy number 414 4574 E14 08B was purchased on March 22, 1978, in the name of Dorothy A. Walsh. This policy covered a 1972 Volkswagen. Both policies could be automatically renewed every six months upon payment of the premium, and were in full force at the time of the accident.

2. As amended effective August 18, 1982, 18 Del. C.Anno. § 3902(b) read in part:

Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $300,000 but not to exceed the limits for personal injury set forth in the basic policy.

requires insurers to offer their insureds increased uninsured/underinsured motorist coverage.

BACKGROUND

On January 27, 1983, Walsh allegedly suffered serious injuries while a passenger in a pickup truck driven by his cousin, Paul E. Oakes, Jr. (hereinafter "Oakes"). Oakes apparently caused his vehicle to cross the center-line of Delaware Route 9, in Delaware City, Delaware, and collide head-on with another vehicle (Walsh Opening Brief at 5). Walsh's alleged injuries include brain damage, multiple fractures, lacerations and scarring for which medical bills in excess of $34,000 have been accumulated (Walsh Opening Brief at 5). Oakes was insured by Colonial Insurance Company of California for the minimum amount then required by Delaware law[3], $10,000 per person, $20,000 per accident, of bodily injury liability insurance. Oakes' insurance carrier paid to Walsh the maximum amount available under his policy, i.e. $10,000 (Walsh Opening Brief at 7).

On the date of the accident, Walsh resided in his parents' home, and thus was covered by the basic uninsured motorist benefits of their State Farm policies. However, Oakes was not an uninsured motorist[4] but, an underinsured motorist, because his bodily injury liability insurance limits were not adequate to fully compensate Walsh for the injuries he sustained. The Walshes' State Farm policies did not provide any underinsured motorist coverage. In an effort to establish underinsured coverage, Walsh asks this Court to (1) declare that State Farm failed to make the offer of higher limits of uninsured/underinsured motorist coverage in connection with the State Farm policies as required by 18 Del. C.Ann. § 3902(b); and (2) reform the State Farm policies to provide $100,000 per person, $300,000 per accident, of uninsured/underinsured motorist coverage.

State Farm contends that it did make an offer in compliance with the requirements of Section 3902(b), but the Walshes rejected it.

THE OFFER.

State Farm contends it mailed offers of higher uninsured motorist coverage to Walsh's parents on two occasions. The first offer was included with the September 20, 1981 and March 20, 1982 premium notices for the State Farm policies. The second offer by State Farm was later in time and after Section 3902(b) had been amended to specifically include underinsured motorist coverage in uninsured motorist coverage. Both State Farm and Walsh agree the second offer is controlling for the purposes of the instant motion (State Farm Answering Brief at 4; Walsh Reply Brief at 2). The second offer by State Farm was mailed to Walsh's parents with their October and December 1982 premium notices.

State Farm's second offer consisted of two documents. The first document was an 8½ inch by 10½ inch pink-colored sheet of paper, folded into thirds pamphlet style, and captioned "CHANGE IN UNINSURED AND UNDERINSURED COVERAGE" (hereinafter the "Pamphlet"). The other document was the semi-annual Premium Notice (hereinafter the "Premium Notice").

The first page of the Pamphlet described the amendment to Section 3902(b) requiring insurance companies to provide underinsured motor vehicle protection to all policyholders who carried uninsured motor vehicle coverage. The first page continued with a description of uninsured motorist coverage and an explanation of how State Farm's underinsured motorist coverage protects the insured when involved in a collision with a person whose insurance is inadequate to fully compensate the State Farm policyholder. The inside of the first page contained five unnumbered para-

---

Such additional insurance shall be underinsured coverage.

**3.** See 21 Del.C.Anno. § 2118.

**4.** 18 Del.C.Anno. § 3902(a)(3)(A) provides that: an uninsured motorist in Delaware is one who carries a bodily injury liability lower than the $10,000 statutory minimum. See also, 21 Del.C. Anno. § 2902(b)(2) (1979).

graphs and a highlighted "box". The first three paragraphs advised the policyholder of various matters relating to the addition of underinsured coverage to the insured's present uninsured coverage.

The remaining two paragraphs stated as follows:

You may purchase Coverage U with limits up to the level of your Bodily Injury Liability (Coverage A) limits or $100,000 per person/$300,000 per accident, whichever is lower. Please refer to the enclosed Premium Notice for *possible offer of higher Coverage U limits.* If there is no premium quoted and you want Coverage U with limits equal to your Coverage A limits, *please see your agent.* (Emphasis added).

If you have any questions, or if other bodily injury limits are desired, please see your agent.

POLICYHOLDER INFORMATION SERVICE

The highlighted "box" stated:

The explanatory section of this brochure contains only a *general description of the changes* in coverage and *is not a statement of contract.* All coverages are subject to the insuring agreements, exclusions and conditions of the policy and applicable endorsements, including the endorsement contained herein. (Emphasis added).

The remainder of the Pamphlet was the endorsement which became part of the insured's policy, describing the amended uninsured coverage.

The second document was the State Farm Premium Notice. The Premium Notice allegedly advised policyholders to "See insert (the Pamphlet) regarding changes in uninsured motor vehicle coverage, Coverage U, and underinsured motor vehicle coverage, Coverage W." State Farm Answering Brief at 7. State Farm asserts language on the Premium Notice informed policyholders that if they wanted uninsured motor vehicle coverage (which now included underinsured motor vehicle coverage), with bodily injury limits equal to the bodily injury limits of the policyholder's basic lia-

bility policy, the policyholder should check a space on the Premium Notice, and pay the indicated premium. The premium to be paid represented the total cost of the policy, including the higher uninsured/underinsured motorist coverage. The Court was unable to review the Premium Notice sent to the Walshes, because State Farm destroys the returned portion of all Premium Notices as part of its normal business procedures. The Walshes acknowledged receipt of the Premium Notice, but cannot recall whether it contained the language described by State Farm.

State Farm submits the mailing of the Pamphlet and the Premium Notice satisfy the requirements for an offer of underinsured motorist coverage as required by Section 3902(b).

DISCUSSION.

I. *Summary Judgment.*

The Third Circuit characterizes summary judgment as "a drastic remedy", *Ness v. Marshall,* 660 F.2d 517, 519 (3rd Cir.1981) (quoting *Tomalewski v. State Farm Life Insurance Company,* 494 F.2d 882, 884 (3rd Cir.1974)), thus it has articulated strict standards for granting summary judgment. In deciding a Motion for Summary Judgment, the District Court does not decide issues of fact; it determines whether any genuine issue of material fact exists. *Ness v. Marshall,* 660 F.2d at 519 (citing *Ransburg Electro-Coating Corp. v. Lansdale Finisher, Inc.,* 484 F.2d 1037, 1039 (3rd Cir.1973) and *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3rd Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969)). The party opposing the motion cannot "rely merely upon bare assertions, conclusory allegations, or suspicions", *Ness v. Marshall,* 660 F.2d at 519 (citations omitted), nor "upon the mere allegations or denials of his pleadings." *Sunshine Books, Ltd. v. Temple University,* 697 F.2d 90, 96 (3rd Cir.1982) (quoting F.R.Civ.P. 56(e), and, citing *First National Bank of Arizona v. Cities Service Company,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)); *accord Gans v. Mun-*

*dy*, 762 F.2d 338, 341 (3rd Cir.1985). However, the moving party has the burden of proving that no genuine issues of material fact exist. *Gans v. Mundy*, 762 F.2d at 341 (quoting *Adickes v. Kress & Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969)).

In reviewing the facts presented by the parties, the District Court "must on the one hand closely scrutinize the affidavits, depositions, and exhibits submitted by the [moving parties], while on the other, indulgently treat those proffered by the [non-moving parties]." *Tunis Brothers Company, Inc. v. Ford Motor Company, et al.*, 763 F.2d 1482, 1488–89 (3rd Cir.1985). Thus, any factual inferences drawn from the evidence submitted by the parties must be "viewed in the light most favorable to the party opposing the motion", *Continental Insurance Company v. Bodie*, 682 F.2d 436, 438 (3rd Cir.1982) (quoting *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d at 405, and, *Goodman v. Mead Johnson & Company*, 534 F.2d 566, 573 (3rd Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)), and any reasonable inferences in favor of the non-moving party must be made. *Id.* at 438 (quoting *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters & Joiners*, 676 F.2d 81, 84 (3rd Cir.1982)). Further, any doubts about the existence of genuine issues of material fact must be resolved against the moving party. *Continental Insurance Company v. Bodie*, 682 F.2d at 438 (quoting *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402, 405 (3rd Cir.1981), *Ness v. Marshall*, 660 F.2d at 519, and, *Tomalewski v. State Farm Life Insurance Company*, 494 F.2d at 884).

In this case, the submissions of the parties indicate there are no genuine issues of material fact, and thus, the remedy of summary judgment is appropriate on the issue of the adequacy of State Farm's offer under Section 3902(b).

## II. *Validity of State Farm's Offer.*

In determining whether to grant summary judgment, this Court must predict whether the Supreme Court of Delaware would construe the language of the two-part offer (Pamphlet and Premium Notice) of State Farm as constituting a legally adequate Section 3902(b) offer, and the return by the Walshes of that Premium Notice as an affirmative rejection of the offer. *O'Hanlon v. Hartford Accident & Indemnity Company*, 522 F.Supp. 332, 335 (D.Del.1981), *aff'd.*, 681 F.2d 807 (3rd Cir. 1982).

The Supreme Court of Delaware recently described the background to the State Legislature's enactment of Section 3902(b). *Arms v. State Farm Mutual Automobile Insurance Company*, 477 A.2d 1060 (Del. 1984). Section 3902 was intended to provide insured motorists with compensation when they were injured by uninsured or underinsured motorists. *Arms*, 477 A.2d at 1063–64. The offer required by Section 3902(b) reflected the perception that insurance policies are "classic examples of contracts of adhesion". *Arms*, 477 A.2d at 1065. Thus, "[t]he prospect of overbearing [was] sufficiently great that Section 3902(b) was enacted to require dissemination of important information which many consumers, other than the most diligent, might not discover." *Id.*[5]

Judicial standards in Delaware generally require insurance companies to be extremely careful when dealing with consumers. The Supreme Court of Delaware has recognized the inherent inequality in the insurer-insured contractual relationship. *Hallowell v. State Farm Mutual Insurance Company*, 443 A.2d 925 (Del.1982); *Steigler v. Insurance Company of North America*, 384 A.2d 398 (Del.1978). Delaware Courts have construed insurance contracts in favor of the insured and "strongly against

---

**5.** In *O'Hanlon v. Hartford Accident & Indemnity Company*, 522 F.Supp. 332, 335 (D.Del.1981), cited with approval in *Arms*, 477 A.2d at 1064, the District Court stated that the General Assembly "sought to assure that each motorist *would be advised* of this right" to contract "for higher uninsured motorist coverage." (Emphasis in original).

the insurer" who drafted it. *Hallowell,* 443 A.2d at 926; *Steigler,* 384 A.2d at 400.

The Delaware Superior Court gave substance to these general principles when it held that, in Section 3902(b) disputes, insurance companies have the burden of proving that the increased coverage was affirmatively offered and affirmatively rejected. *Burton v. Coleman,* No. 82C–JA–116, Slip Op. at 3 (Del.Super.Ct. July 12, 1984); *Schwartz, et al. v. Centennial Insurance Company, et al.,* No. 5350, Slip Op. at 4 (Del.Ch.Ct. February 27, 1981).

State Farm alleges that it affirmatively offered increased coverage to the Walshes and they affirmatively rejected it. It is undisputed that an offer was made. The issue for this Court is to determine whether State Farm's offer met the requirements of Section 3902(b).

In *Morris v. Allstate Insurance Company,* No. 82C–OC–23 (Del.Super.Ct. July 10, 1984), the Delaware Superior Court enunciated standards with which insurance companies must comply in order to make a legally adequate Section 3902(b) offer. In *Morris,* the court said that the statute imposes an affirmative duty on insurers to make the offer in such a manner that the insured can make an informed decision. *Morris,* Slip Op. at 3, 4 (citing *O'Hanlon,* 552 F.Supp. 332 (D.Del.1981)). In elaborating, the court stated:

> An informed decision can be made only if all the facts reasonably necessary for a person to be adequately informed to make a rationale, knowledgeable and meaningful determination ... One element which is essential to the exercise of a meaningful choice is the cost of the coverage ... [T]he communication must clearly offer to issue the specific coverage, that offer must be made in the same manner and with as much emphasis as the insurer's other coverage, and if there is oral discussion of any of the proposed coverage, it should include oral reference to the offer of uninsured motorist coverage.

*Id.* at 4–5.

In applying that standard to an insurance application, the court found that the offer of increased uninsured motorist coverage was not legally adequate. *Id.* at 5. The disputed offer stated that increased uninsured motorist coverage "was available", and gave the liability limits. There was no oral discussion of the offered coverage. *Id.* The court found that "the language lack[ed] the affirmative force of a meaningful offer, as contemplated by the statute." *Id.* The court also found that the cost of the increased coverage was not quoted. *Id.* The court concluded that there was no "meaningful offer" as required by Section 3902(b).

It is clear that Delaware Courts require a clear and unequivocal offer that permits the insured to make a knowledgeable decision whether to accept or reject the insurer's offer. The courts further require that the insurer be able at some later time, when challenged, to be able to affirmatively establish that such a process has taken place.

■ This Court, like the *Morris* court, is reluctant to undertake the task of specifying an exact means by which a Section 3902(b) offer must be made. However, an insurer should be able to clearly demonstrate that it has communicated the following to its insured: (1) a clear and unequivocal offer to issue the specific coverage contemplated by Section 3902(b); and (2) the cost of the coverage being offered.

■ Further, for an insurer to establish an affirmative rejection by the insured, it should be able to demonstrate that the insured: (1) received the communications outlined above; and (2) affirmatively rejected the insurer's offer for the specific coverage offered.

State Farm argues that it met its burden of affirmatively offering the increased underinsured motorist coverage when it mailed to the Walshes the Pamphlet and the Premium Notice which were described previously. State Farm argues that the Court should consider these two documents together as constituting the affirmative offer required by Section 3902(b), because the

Premium Notice provided the only element missing from the Pamphlet, i.e. the cost of the coverage.

The Court is not persuaded by State Farm's argument that the Pamphlet and the Premium Notice together constitute a legally adequate offer. Assuming that the Premium Notice contained the necessary cost quotation, it still must be subject to the offeratory language contained in the Pamphlet.

An examination of the Pamphlet reveals it lacked the "affirmative force of a meaningful offer." *Morris*, at 5. On the inside of the first page, one of the explanatory paragraphs refers the insured "to the enclosed Premium Notice for possible offer of higher Coverage U limits." The disclaimer in the "box" on the same inside page reads this is not a "statement of contract", and contains the salutory comment "please see your agent." These statements are ambiguous at best and certainly do not demonstrate that the Pamphlet is presenting a clear and unequivocal offer to issue the coverage contemplated by Section 3902(b).

The use of a two document format with each document containing references to the other in itself is confusing to the typical consumer. However, combined with qualifying statements such as "possible offer" and "this is not a statement of contract", it becomes fatal to State Farm's effort to comply with Section 3902(b).

Moreover, State Farm cannot demonstrate the Walshes' Premium Notices cured the Pamphlet's deficiencies. The Walshes' Premium Notices allegedly contained the following statement:

SEE INSERT REGARDING CHANGES IN UNINSURED MOTOR VEHICLE COVERAGE, COVERAGE U AND UNDERINSURED MOTOR VEHICLE COVERAGE, COVERAGE W.

COVERAGE U NOW INCLUDES MOTOR VEHICLE PROTECTION.

IF YOU WANT COVERAGE U WITH BODILY INJURY LIMITS OF $XXX, XXX/XXX AND PROPERTY DAMAGE OF FIVE THOUSAND, CHECK HERE ____ AND PAY $XXX.XX. RETURN THIS PART OF YOUR NOTICE WITH YOUR PAYMENT.

IF OTHER BODILY INJURY LIMITS ARE DESIRED, PLEASE SEE YOUR AGENT IMMEDIATELY.

(State Farm Brief at 7). According to State Farm, the first set of X's indicated the increased liability limits available, and the second set indicated the total premium, including the cost of the increased coverage elected. *Id.* In its brief, State Farm acknowledges the importance of a cost quotation in all Section 3902(b) offers. However, in deposition testimony by its Regional Operations Supervisor, Ridgely T. Brown, Jr., State Farm conceded that not all Premium Notices contained cost quotations. Brown testified that no cost was shown wherever the computer could not determine the liability limits (State Farm Brief at 8, citing Brown Deposition at 21–22). State Farm urges the Court to accept Brown's opinion that the Walsh's cost quotation was easily computed, and therefore was printed on their Premium Notices by the computer. Brown's opinion is an essential element of State Farm's argument because the cost language was printed on the portion of the Premium Notice which the Walshes had to return with their payment. As discussed earlier, these portions of the Walshes' Premium Notice are not available for examination at this time.

At oral argument, and in his brief, Walsh asserted that his parents did not know whether their Premium Notices contained price quotations, whether they checked the additional coverage, and whether they paid the higher premium. State Farm has presented no evidence challenging Walsh's or his parents' credibility. In *Burton v. Coleman*, 82 C–JA–116, Slip Op. at 3, an insurance company's only evidence that a plaintiff had received a Section 3902(b) mailing was a list containing the plaintiff's name and last known address. When the case was before the Superior Court on the plaintiff's Motion for Partial Summary Judgment, the court held that, "(i)n the absence of factors casting doubt on the credibility of specific testimony of non-re-

ceipt of a notice, that testimony is likely to prevail over general evidence of the mailing of a notice." *Burton,* at 3. Similarly, this Court finds that, absent specific challenges to the Walsh's statements, and absent other documentation that the Walshes' Premium Notice contained a price quotation, State Farm cannot carry its burden of proving that the necessary cost quotation was included in the Walshes' Premium Notices. The inability to carry its burden of proof regarding the cost quotation alone is sufficient to defeat State Farm's claim that it made an adequate Section 3902(b) offer.

The Court believes that more than the Pamphlet and Premium Notice were required for State Farm to meet its statutory obligation. Here, State Farm has not been able to affirmatively demonstrate that it made a clear, unequivocal offer, including a price quotation, so that the Walshes could intelligently decide whether or not to purchase uninsured motorist coverage.

### III. *Affirmative Rejection.*

Delaware Courts have interpreted Section 3902(b) as imposing upon the insured the burden of proving that the insured affirmatively rejected a Section 3902(b) offer. *Arms v. State Farm Mutual Automobile Insurance,* 477 A.2d 1060, 1066 (Del.1984); *Schwartz v. Centennial Insurance Company, et al.,* No. 5350 (1977), Slip Op. at 8 (Del.Ch.Ct. September 28, 1981). Having found that the two documents relied upon by State Farm as constituting their offer to the Walshes under Section 3902(b) are inadequate, this Court does not reach the question of whether or not State Farm can establish that there was an affirmative rejection.

### CONCLUSION.

██ Walsh requests that this Court enter a declaratory judgment that the uninsured motorist limits of his parents' policies are the same as their personal liability limits were at the time of the accident, $100,000 per person and $300,000 per accident.[6]

---

**6.** State Farm did not dispute in its brief or at oral argument the liability limits reported by

██ The Declaratory Judgment Act grants courts the right to enter a declaratory judgment where an "actual controversy" exists. 28 U.S.C. § 2201 (1982). The decision whether to grant or deny declaratory relief is within the sound discretion of the court. *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), *cited in Spivey Company v. Travellers Insurance Company,* 407 F.Supp. 916, 917 (E.D.Pa.1976). A declaratory judgment establishing the limits of liability in an insurance policy is appropriate. *Aetna Life Insurance Company of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1936), *cited in Bird v. Penn Central Company,* 351 F.Supp. 700, 701 (E.D.Pa.1972).

Resolving all factual inferences in favor of State Farm, its offer did not constitute a valid Section 3902(b) offer under that statute and the case law interpreting it. Thus, Walsh is entitled to a declaration that his parents' policy limits for uninsured motorist coverage are equal to the personal injury liability limits on their basic policy at the time of his accident. An Order will be entered in accordance with this Opinion.