Kim O. **CORSO** and Tracy S. **Morgan, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

Civ. A. No. 86–312–JLL.

United States District Court, D. Delaware.

Aug. 13, 1987.

---

Harold Schmittinger and William D. Fletcher of Schmittinger & Rodriguez, P.A., Dover, Del., for plaintiffs.

F. Alton Tybout and Sherry Ruggiero of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I.  INTRODUCTION

Once again, this Court must venture into the morass of Delaware uninsured motorist law and resolve a previously unanswered question of state law.[1]  This is by no means the first time the federal court in Delaware has been called upon to make such a determination.[2]  *See, e.g., Walker v. State Farm Mut. Auto. Ins. Co.,* 661 F.Supp. 930 (D.Del.1987); *Ritter v. Amica Mut. Ins. Co.,* 633 F.Supp. 362 (D.Del. 1986); *O'Hanlon v. Hartford Acc. & Indem. Co.,* 439 F.Supp. 377 (D.Del.1977), *modified,* 639 F.2d 1019 (3d Cir.1981).  The Court has jurisdiction in this action under the diversity provisions of 28 U.S.C. § 1332.  Corso and Morgan are citizens of Delaware (Docket Item ["D.I."] 1 at ¶¶ 1–2), whereas State Farm is an Illinois corporation with its principal place of business in Illinois.  (*Id.* at ¶¶ 3–4.)

This action was brought by two young women, Kim O. Corso ("Corso") and Tracy S. Morgan ("Morgan"), who were injured in an automobile accident.  Both women seek to recover uninsured motorist benefits

---

1.  The experience of a court deciding an insurance question was aptly described by Justice Lynch of the Supreme Judicial Court of Massachusetts when he stated, "[N]avigating the tortious twists of automobile insurance law poses a challenge at least equal to that faced by the uninitiated driver on his foray into the streets of Boston." *Cardin v. Royal Ins. Co.,* 394 Mass. 450, 476 N.E.2d 200, 202 (1985).

2.  The Court is deciding the issues before it, because the parties decided against certifying the issues to the Delaware Supreme Court.

from State Farm Mutual Automobile Insurance Company ("State Farm") under a policy insuring Corso's car. Additionally, Corso seeks uninsured motorist benefits from a State Farm policy insuring her mother and stepfather's car. Corso and Morgan have made a motion for partial summary judgment on the issue of their entitlement to benefits from the two State Farm policies. (D.I. 10.) State Farm has made a motion for summary judgment on grounds that as a matter of law Corso and Morgan are precluded by provisions of the policies from recovering uninsured motorist benefits. (D.I. 12.)

This Court can grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Additionally, the Court must draw all inferences from the record in a light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). As will be seen, the parties do not dispute the essential facts of this case. The potential rights and liabilities of the parties turn on this Court's legal interpretation of the effect and validity of certain provisions in the State Farm policies. Therefore, the Court will be able to grant one of the parties' motion for summary judgment.

■■■ Because this Court sits in diversity jurisdiction, it must apply the law of the forum state, Delaware, to the case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Normally, the Court would rely on Delaware Supreme Court holdings applicable to the issues in the case. Given the absence of any such decisions, the Court must predict how the Delaware Supreme Court would resolve the disputed legal issues. *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 24 (3d Cir. 1986); *Pennsylvania Glass Sand Corp. v.*

*Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981); *Willis v. Continental Casualty Co.*, 649 F.Supp. 707 (D.Del. 1986); *Walsh v. State Farm Mut. Auto. Ins. Co.*, 624 F.Supp. 1093, 1097 (D.Del. 1985). An accurate forecast of what the Delaware Supreme Court would decide must begin with an examination of the best available evidence. *Douty v. Nationwide Mut. Ins. Co.*, C.A. No. 85–027–CMW, slip op. at 5 (D.Del. April 10, 1986) [Available on WESTLAW, DCT database]. Evidence of state law can come in the form of lower state court decisions, related decisions and considered dicta of a state's highest court, scholarly works, and any other reliable data tending convincingly to show how the highest court would resolve the issue. *Rabatin*, 790 F.2d at 24; *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). State precedents must be scrutinized with an eye toward the broad policies behind those decisions, and the doctrinal trends they evince. *McKenna*, 622 F.2d at 662. With these considerations in mind, the Court will proceed to resolve the parties' motions.

## II. BACKGROUND

The parties do not dispute the relevant facts of this case. Corso and Morgan were riding in Corso's 1980 Ford Mustang when they were involved in an accident on July 8, 1984, at the intersection of State Route 42 and U.S. Route 13 in Kent County, Delaware. (D.I. 1 at ¶ 7; D.I. 3 at ¶ 7.) The accident was caused by the negligence of Willie T. Mann ("Mann") who was driving a 1984 Chevrolet van owned by Herbert Jenkins ("Jenkins"). (D.I. 1 at ¶¶ 9–10; D.I. 3 at ¶¶ 9–10.)

At the time of the accident, Jenkins' van was insured by Pacific American Insurance Company ("Pacific American"). Subsequent to the accident, Pacific American became insolvent and never paid Corso or Morgan's claims for liability benefits. (D.I. 1 at ¶ 14; D.I. 3 at ¶ 14.) Mann was insured by Royal Insurance Company ("Royal"), when the accident occurred. The Royal policy had a liability coverage limit of $100,000 per occurrence which was paid

equally to Corso and Morgan. (D.I. 1 at ¶ 15; D.I. 3 at ¶ 15.)

In the present action, Corso and Morgan seek to recover their damages in excess of the $50,000 each was paid by Royal. They contend they are entitled to uninsured/underinsured motorist ("UM/XIM") coverage up to the limits of $50,000 per person and $100,000 per occurrence set forth in the State Farm policy insuring Corso's Mustang ("Corso policy").[3] Additionally, Corso claims she is entitled to UM/XIM benefits from a State Farm policy issued to her mother and stepfather, Mr. and Mrs. Robert E. Carey ("Carey policy"). (D.I. 1 at ¶ 22.) State Farm has denied coverage under both policies on grounds that provisions in the insurance policies preclude recovery in this particular case.

The Corso and Carey policies contain the same policy language. The policies provide for uninsured motorist coverage as follows:

> We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* or *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*
> THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENTS OF JUDGMENTS OR SETTLEMENTS.

(D.I. 12A at A–9, A–17) (emphasis in original). The policy defines an uninsured motor vehicle as:

> 1. a land motor vehicle which does not have, at the time of the accident:
>   a. cash or securities on file with the Delaware State Treasurer, or
>   b. a bodily injury and property damage liability bond or insurance policy in at least the amount specified by the Delaware Motor Vehicle Safety Responsibility Law; or
> 2. a land motor vehicle insured or bonded for bodily injury and property damage

liability at the time of the accident, but the insurer or surety:
>   a. legally denies coverage; or
>   b. is or becomes insolvent; or
>   c. has been placed in receivership; or
> 3. a land motor vehicle:
>   a. the ownership, maintenance or use of which may be insured or bonded for bodily injury liability are less than the limits *you* carry for uninsured motor vehicle coverage under this policy; or
> 4. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:
>   a. the *insured;* or
>   b. the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured* or *property damage* to the property of an *insured;* or
> 5. a "non-contact" land motor vehicle whose owner or driver remains unknown and which causes *bodily injury* to the *insured* or *property damage* to the property of the *insured.*

(*Id.* at A–17–18) (emphasis in original).

If the coverage is found to apply due to an accident involving an uninsured motorist, as defined in the policy, the coverage is subject to the following limits of liability:

> 6. The following applies if the vehicle in the accident is an *uninsured motor vehicle* as defined in items 1., 2., or 4. under the heading, *"Uninsured Motor Vehicle—means":*
>   Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* or *property damage* sustained by the *insured.*
> 7. The following applies if the vehicle in the accident is an *uninsured motor vehicle* as defined in item 3. under the heading, "Uninsured Motor Vehicle—means":
>   The most we pay will be the lesser of
>   a. the difference between the amount of the *insured's* damages for *bodily*

---

**3.** Hereinafter, policy limits will be expressed in a form such as 50/100 which signifies that the policy has coverage limits of $50,000 per person and $100,000 per occurrence.

*injury,* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury;* or

b. the limits of liability of this coverage.

(*Id.* at A–18) (emphasis in original).

Additionally, the terms of the policy expressly exclude UM coverage under the following circumstances:

THERE IS NO COVERAGE:

. . . .

2. FOR *BODILY INJURY* TO AN INSURED:

a. WHILE *OCCUPYING*, OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR COVERAGE UNDER THIS POLICY.

(*Id.* at A–10) (emphasis in orginal).[4] The policy defines a "relative" as "a person related to you or your spouse by blood, marriage or adoption who lives with you." (*Id.* at A–2.) The parties do not dispute that Kim Corso is a relative for purposes of the Carey policy. (D.I. 8 at 14–18.) A relative who qualifies as an insured under the policy would have liability coverage under the terms of the policy in the following circumstances:

The liability coverage extends to the use, by an *insured,* of a *newly acquired car,* a *temporary substitute car* or a *non-owned car.*

(D.I. 12A at A–5) (emphasis in original).

By legislative mandate, uninsured motorist coverage must be offered by insurers. 18 *Del.C.* § 3902 requires the following:

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who

are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

Uninsured motorist coverage is not mandatory in Delaware, because section 3902(a)(1) allows the coverage to be rejected in writing. If any of the provisions of State Farm policies set forth above violate the requirements of section 3902, then the Court must declare that provision to be void. *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d 670, 672 (Del.Supr.1978).

State Farm contends that the policy provisions preclude Morgan from recovering under the Corso policy and Corso from recovering under either policy. Specifically, State Farm argues (1) that Jenkins' van was not uninsured within the meaning of the policy or section 3902 because the driver of the vehicle, Mann, was insured, (2) that even if Jenkins' van was uninsured, State Farm is entitled to set-off the amount of liability coverage paid to Corso and Morgan by Royal, (3) that the OMV exclusion is valid and therefore precludes Corso's recovery under the Carey policy, and (4) that the "other insurance" clause in the policy precludes Corso from aggregating the UM/XIM coverage limits available under both policies. Corso and Morgan argue that they are entitled to partial summary judgment in their favor because (1) Jenkins' van was uninsured and State Farm's interpretation of the "Limits of Liability" provision is unreasonable, arbitrary, and unenforceable in light of the requirements of section 3902, and (2) the OMV exclusion violates the section 3902 coverage requirement and therefore is null and void.

## III. ANALYSIS

### A. *Introduction*

To resolve the dispute before it, the Court must interpret the meaning of the

---

**4.** Hereinafter, this policy provision shall be referred to as the Owned Motor Vehicle ("OMV") exclusion.

State Farm policies. Therefore, several rules of construction should be noted. The Delaware state courts have clearly established the rule that if an insurance contract contains ambiguous language, then the language of the contract is always construed most strongly against the insurance company which drafted it. *Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d 925, 926 (Del.Supr.1982); *Steigler v. Insurance Co. of North America,* 384 A.2d 398, 400–01 (Del.Supr.1978). This rule does not apply unless an ambiguity actually exists. *Hallowell,* 443 A.2d at 926; *Apotas v. Allstate Ins. Co.,* 246 A.2d 923, 925 (Del.Supr. 1968). If the language is clear, the parties are bound by the policy's plain meaning because creating an ambiguity where none exists could effectively create a new contract between the parties with rights and liabilities to which the parties had not assented. *Hallowell,* 443 A.2d at 926; *Apotas,* 246 A.2d at 925; *Lamberton v. Travelers Indem. Co.,* 325 A.2d 104, 106 (Del.Super.1974), *aff'd,* 346 A.2d 167 (Del.Supr. 1975). An ambiguity exists when two or more reasonable interpretations of the contract are possible. *Hallowell,* 443 A.2d at 926; *Cheseroni v. Nationwide Mut. Ins. Co.,* 402 A.2d 1215, 1217 (Del.Super.1979), *aff'd,* 410 A.2d 1015 (Del.Supr.1980); *Lamberton,* 325 A.2d at 106.

### B. *Corso Policy*

Corso and Morgan seek to recover some or all of the 50/100 UM/XIM coverage provided by the State Farm policy insuring Corso's Mustang. State Farm contends Jenkins' vehicle was not "uninsured" within the meaning of the policy or 18 *Del.C.* § 3902. Second, State Farm argues that even if Jenkins' vehicle is uninsured, State Farm is entitled to set-off the amount Corso and Morgan recovered from Mann's liability insurance coverage with Royal. The Court agrees that if Jenkins' vehicle is considered to be insured because of Mann's coverage, then Corso and Morgan cannot recover under the policy, because none of the five policy definitions of "uninsured motor vehicle" would be met. The question of whether an uninsured vehicle operated by an insured driver should be considered to be insured for purposes of section 3902 has never been answered in Delaware. The Court will not unnecessarily resolve this question of state law, because summary judgment can be granted in favor of State Farm even if the Jenkins' vehicle is assumed to be uninsured.

As noted above, the opening paragraph of the uninsured motorist coverage endorsement states that State Farm "will pay damages for bodily injury or property damage an insured is legally entitled to collect from the owner or of an uninsured motor vehicle." Under the terms of the policy, Jenkins' vehicle meets the second definition of uninsured motor vehicle due to the insolvency of Pacific American. This means paragraph six under the "Limits of Liability" section of the endorsement applies. To reiterate, paragraph six stated that "[a]ny amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* or *property damage* sustained by the *insured.*" Morgan and Corso argue that the opening paragraph gives the insured the right to collect all damages under the State Farm coverage and that paragraph six simply reduces the total damages by any amount recovered from other sources, as a means to prevent double recovery. This would allow Morgan and Corso to recover the amount of their damages in excess of the $50,000 each recovered from Royal up to the $50,000 per person limit in the State Farm policy.

The Court does not accept Corso and Morgan's interpretation of the policy because this interpretation does not reflect the effect of the first paragraph of the "Limits of Liability" section which states:

1. Bodily Injury

The amount of coverage is shown on the declarations page under "Limits of Liability-U-Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* Under "Each Accident" is the total amount of coverage for all damages due to *bodily injury* to

two or more persons in the same accident.

(D.I. 12A at A–18) (emphasis in original). This paragraph clearly defines the amount of coverage as the per person and per occurrence limits of liability stated on the declaration page. Under this definition of coverage, the amount recovered from Royal would be deducted from the $50,000 per person coverage limits, instead of the total amount of damages. The Court concludes that this language is not ambiguous and therefore holds that when the opening paragraph of the endorsement is read in conjunction with the first and sixth paragraphs of the limits of liability section, the $50,000 recovered by Corso and Morgan reduces the amount of coverage under the Corso policy to zero.

■ As discussed above, if the result reached under the Court's interpretation of the policy violates the requirements of section 3902, then the limitation provision will be void. *Abramowicz,* 386 A.2d at 673. The purpose of section 3902 is "to make available the opportunity for the insured to have the same risk protection posed by an uninsured driver which the insured provides for others through the insured's liability coverage...." *Brown v. Comegys,* 500 A.2d 611, 614 (Del.Super.1985), *citing O'Hanlon,* 439 F.Supp. at 383. Stated in another way, "[t]he coverage contemplated by 18 *Del.C.* § 3902 is to place the insured in the same position as he would have been if the tortfeasor had carried the same liability coverage which the insured carried...." *Brown,* 500 A.2d at 614.

The original *O'Hanlon* opinion is one of the earliest and most influential Delaware decisions on the subject of uninsured motorist coverage. *O'Hanlon* helps to resolve this case. *O'Hanlon* involved a passenger in a car which was forced off the road by an unidentified vehicle. This passenger sustained severe injuries in the accident which eventually led to his death. The passenger's father brought an action against several insurance companies which

insured the O'Hanlons and against Nationwide Mutual Insurance Company which provided uninsured motorist coverage on the driver's car. The uninsured motorist coverage portion of the policies at issue in *O'Hanlon* included a "limits of liability" clause which provided:

> Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by:
>
> (1) all sums paid on account of such bodily injury or property damage by or in behalf of....
>
> (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage, including all sums paid under the bodily injury or property damage liability coverage of the policy.

439 F.Supp. at 381–82, n. 4. This clause is essentially the same as paragraph 6 of the "Limits of Liability" section of the Corso policy.

The *O'Hanlon* plaintiff contended that the result under the "limits of liability" clause is inconsistent with the purpose of section 3902 and, thus, that the clause is void. Judge Stapleton disagreed and held the provision to be enforceable.[5] Judge Stapleton stated that one function of section 3902 is to establish a floor on the amount of coverage required in the absence of a written waiver. This serves the objective of providing a minimum pool of resources upon which an injured party can draw. 439 F.Supp. at 383. Because the "limits of liability" provision in the *O'Hanlon* policies did not undermine the statutory objective of assuring such a minimum pool, Judge Stapleton upheld the provision.

The view that one of the purposes of the uninsured motorist statute is to provide a minimum pool is supported by the language of the statute itself. Section 3902(a)(4) provides:

**5.** Section 3902 has been amended since the *O'Hanlon* decision, but the amendments did not modify the statute in a manner to unsettle Judge Stapleton's opinion on the enforceability of the "limits of liability" provision.

In the event of payment to any person under uninsured vehicle coverage and, subject to the terms of such coverage, to the extent of such payment, the insurer shall be entitled to the proceeds of any settlement recovery from any person legally responsible for the bodily injury or property damage as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle; provided, that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.

This subsection provides subrogation rights to the uninsured motorist coverage insurer. The Court agrees with Judge Stapleton's conclusion that "[t]his provision indicates that the legislature did not intend to require that the injured party receive the aggregate limits of all policies which cover the injuries." 439 F.Supp. at 383.[6]

Corso and Morgan cite two recent Superior Court cases as support for their argument that the "Limits of Liability" provision in the State Farm policy is inconsistent with the requirements of section 3902. *Brown v. Comegys*, 500 A.2d 611 (Del.Super.1985); *Fisher v. Nationwide Ins. Co.*, 84C–AU–29 (Del.Super. April 22, 1986) [Available on WESTLAW, DE–CS database]. *Brown* arose out of an automobile accident allegedly caused by the defendant, Comegys, and an unknown joint tortfeasor. The plaintiff sought uninsured motorist coverage from his insurer for the damages caused by the unknown tortfeasor. The insurer cited section 3902(a)(4) to support the argument that the uninsured motorist coverage should be reduced by the amount recovered from Comegys. The Superior Court disagreed and concluded that the insurer's contention is not supported by the statute nor consistent with the objective of providing an insured with protection as though the tortfesor had carried the same liability coverage as that carried by the

insured. 500 A.2d at 613. *Fischer* involved virtually identical facts and cited *Brown* as controlling authority on the issue of whether the uninsured motorist coverage insurer can reduce the coverage by the amount recovered from the known tortfeasors.

The Court does not agree with Corso and Morgan's argument that *Brown* and *Fischer* necessarily mean that the provision in the State Farm policy is void. Both cases are distinguishable on the facts from the present dispute. The present case does not involve joint tortfeasors. Instead, Mann is the only tortfeasor. Therefore, the present case is much more similar to the *O'Hanlon* facts than the facts of *Brown* or *Fischer*. The Court is mindful that lower state court decisions can be helpful to indicate the direction of the law in the state, but the persuasive weight of *Brown* and *Fischer* is diminished by the fact that not all Superior Court judges agree with the holding of these cases. *See Crystal v. Walker*, C.A. 81C–MY–97, C.A. No. 82C–JL–62 (Del.Super. January 24, 1985) (uninsured motorist coverage is not applicable unless a judgment obtained by the insured is in excess of the amount available from other insured tortfeasors).

After considering the arguments on both sides of this issue, the Court will follow the lead taken by the District Court in *O'Hanlon*. The *O'Hanlon* decision is a decade old. Although the Supreme Court of Delaware has not had the opportunity to rule on the validity of a "Limits of Liability" provision similar to those involved in *O'Hanlon* and this case, the Legislature has had the opportunity to change the often amended section 3902 to effectuate a result different than that resolved in *O'Hanlon*.[7] The Court holds that the "Limits of Liability" section of the State Farm policy does not violate section 3902. Therefore, summary judgment will be granted in favor of State

---

**6.** The current section 3902(a)(4) was section 3902(d) at the time of *Hanlon*. Section 3902(d) did not include the proviso at the end of the section. Otherwise, the sections are identical. In the Court's opinion, this modification does not change Judge Stapleton's conclusion, because the proviso does not affect the potential recovery of an insured.

**7.** The statute has been amended three times since 1977.

Farm with respect to Corso and Morgan's claim for benefits under the Corso policy.

### B. *Carey Policy*

■ To decide whether Kim Corso can recover UM/XIM benefits under the Carey policy, this Court must establish whether the owned motor vehicle exclusion in the Carey policy is valid. This is a question which has never been directly addressed by a court in Delaware. After considering cases in other jurisdictions which have either upheld or struck down OMV exclusions, the purpose of the Delaware uninsured motorist statute, and Delaware cases dealing with related types of exclusions, this Court holds that the Delaware Supreme Court would decide that the OMV exclusion in the Carey policy is valid. Therefore, State Farm's motion for summary judgment will be granted with respect to the Carey policy.

A major difference in opinion exists among other jurisdictions which have confronted the question of whether OMV exclusions are valid. Some courts have upheld the validity of such exclusions with a variety of rationales. *See, e.g., Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1173–74 (Ind.App.1984) (sons precluded by OMV exclusion from recovering under father's UM/XIM coverage after already recovering from his own UM/XIM insurer, because the OMV exclusion did not dilute or diminish the protection required by statute); *Adelman v. State Farm Mut. Auto. Ins. Co.,* 255 Pa.Super. 116, 386 A.2d 535, 542 (1978) (wife cannot recover under policy insuring her husband's car so long as OMV exclusion does not leave UM/XIM coverage below statutory minimum. The fact that two premiums have been paid is not by itself enough to justify payment under both policies); *Malo v. Aetna Casualty & Sur. Co.,* 459 A.2d 954 (R.I.1983) (OMV exclusion does not violate public policy because the policy covers the named insured); *Miller v. Farmers Ins. Co.,* 108 Idaho 896, 702 P.2d 1356, 1359 (1985) (OMV exclusion is enforceable and serves the purpose of forcing a resident relative to obtain insurance coverage); *Arguello v. State Farm Mut. Auto. Ins. Co.,* 42 Colo.App.

372, 599 P.2d 266, 268 (1979) ("So long as a policy assumes payment of the statutory minimum, a limitation is not repugnant to the statute."); *Farmers Ins. Co. v. Miller,* 87 Wash.2d 70, 549 P.2d 9, 12 (1979) (OMV exclusion does not violate public policy, because "statute does not mandate any particular scope for the definition of who is an insured in a particular automobile insurance policy"). Undeniably, a greater number of states have invalidated OMV exclusions, again for a variety of reasons. *See, e.g., Doxtater v. State Farm Mut. Auto. Ins. Co.,* 8 Ill.App.3d 547, 290 N.E.2d 284, 288 (1972) (intent of Legislature was to protect all insureds); *Nygaard v. State Farm Mut. Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151, 156 (1974) (uninsured motorist statute provides broad coverage and any exceptions to this coverage should be explicitly sanctioned by the Legislature); *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis.2d 172, 361 N.W.2d 680 (1985) (statute contains provision to void reducing clauses such as an OMV exclusion); *Harvey v. Travelers Indem. Co.,* 188 Conn. 245, 449 A.2d 157, 161 (1982) (by providing mandatory uninsured motorist coverage, the Legislature extended the insured to be protected at all times, regardless of what vehicle the insured occupies). Given the lack of a clear direction of the law on the issue of the validity of OMV exclusions, the Court must turn to other sources to assist it in reaching a decision.

The parties agree that the Delaware Supreme Court has never addressed the issue of the validity of OMV exclusions, but a recent Superior Court case and a recent federal district court case have upheld similar types of policy exclusions. *State Farm Mut. Auto. Ins. Co. v. Deeble,* C.A. No. 83C–JA–89 (Del.Super. Jan. 29, 1987) [Available on WESTLAW, DE–CS database]; *Martin v. Colonial Ins. Co.,* 644 F.Supp. 349 (D.Del.1986). *Deeble* involved a man whose employer lent him a car. The man's daughter was injured in an accident while driving the company car. Suit was brought against State Farm which insured the Deebles' family car. State Farm had denied coverage on the basis of policy lan-

guage which excluded coverage for a vehicle "[f]urnished or available for the regular or frequent use of you, your spouse or any relative." *Id.* at 352. The Superior Court did not question the validity of the provision and stated that the provision served the purpose of "requir[ing] other insurance when the chance of liability is increased by the use of two cars under a one car premium policy."

*Martin* involved a similar type of exclusion. The plaintiff was an independent contractor who regularly leased trucks owned by Xpress Truck Lines. While driving one of these trucks, the plaintiff was hit from behind. The plaintiff sought to recover from Colonial which insured his personal vehicles. The Colonial policy stated that benefits would not be paid for an accident "involving a motor vehicle you or any member of your household owns or has available for regular use, but does not have insured under this policy." *Martin,* 644 F.Supp. at 353. The *Martin* opinion cites an earlier Superior Court opinion which explained the following:

> The purpose of the "other automobile" provisions of the policy ... is to provide coverage to a driver without additional premiums, for the occasional or infrequent driving of an automobile other than his own.... These provisions are not to take the place of insurance on automobiles which are furnished to the insured regularly in his business or occupation.

*Id.* at 352 (quoting *Home Ins. Co. v. Kennedy,* 52 Del. 42, 46, 152 A.2d 115, 118 (Del.Super.1959)).

This Court concludes that the OMV exclusion in the Carey policy mirrors the "regular use" exclusions in *Deeble* and *Martin* both in purpose and effect. The Carey policy contains another automobile provision which covers a temporary substitute car, a newly acquired car, and a car not owned by an insured, but driven with the owner's consent. (D.I. 12A at A-9.) This Court has no reason to believe that the Delaware Supreme Court would disagree with the *Kennedy* court's succinct expression of the purpose behind other

automobile provisions or that the Delaware Supreme Court would reach a holding at odds with *Deeble* and *Martin.* Therefore, the Court holds that the Delaware Supreme Court would affirm the validity of the OMV Exclusion in this particular case. Therefore, summary judgment will be entered in favor of State Farm with respect to Corso's claims for recovery under the Carey policy.

## CONCLUSION

State Farm's motion for summary judgment will be granted. Corso and Morgan's motion for partial summary judgment will be denied. A final judgment will be entered in conformity with this opinion.